757 F.2d 184
 118 L.R.R.M. (BNA) 3070, 102 Lab.Cas. P 11,401
 CONTRACTORS, LABORERS, TEAMSTERS AND ENGINEERS HEALTH AND
WELFARE PLAN; Contractors, Laborers, Teamsters and
Engineers Pension Plan; Omaha-Council Bluffs Laborers Local
No. 1140 Holiday Trust; Laborers Training Fund and
Construction and General Laborers Union, Local No. 1140, Appellants,
v.
Robert HROCH, d/b/a Associated Wrecking Company, Appellee.
 No. 84-1328.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 10, 1984.
Decided March 13, 1985.
 
 David Weinberg, Omaha, Neb., for appellants.
 Dennis E. Martin, Omaha, Neb., for appellee.
 Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 This matter is before this Court for the second time. In Contractors Health & Welfare Plan v. Associated Wrecking Co., 638 F.2d 1128, 1134 (8th Cir.1981), we held that the plaintiffs (the Construction and General Laborers Union No. 1140 (the Union) and the Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan, the Omaha-Council Bluffs Laborers Local No. 1140 Holiday Trust, the Contractors, Laborers, Teamsters and Engineers Pension Plan, and the Laborers' Training Fund (collectively, the Trusts)) could enforce a prehire agreement (authorized by 29 U.S.C. Sec. 158(f) (1982)) with the defendant, Associated Wrecking and Salvage Company (the Company), even though the Union never achieved majority status among the Company's workers.[1] We remanded for a determination of the "interpretation, application, or duration of the parties' agreement." The court on remand found the Company liable for contributions under the agreement, but held that the Union failed to satisfy its burden of proof on the issue of damages. For the reasons set forth below, we reverse and remand.
 
 
 2
 I. FACTS.
 
 
 3
 On June 9, 1975, the Company entered into a "participation agreement" with the Union under which the parties agreed to abide by the terms and provisions of collective bargaining agreements between the Union and the Associated General Contractors Employers Association of Omaha, Nebraska, a/k/a the Omaha Building Contractors Employers Association[2]; the Heavy Contractors Association, Inc., of Omaha, Nebraska; the Building Construction Employers Association, of Lincoln, Nebraska, Inc.; and the Council Bluffs Contractors Association, Inc. of Council Bluffs, Iowa. These agreements apply to a wide range of workers which are classified under the rubric "construction and general laborers" and cover a geographical area which includes most of the southwestern quarter of Iowa and the eastern third of Nebraska. The Company also agreed to abide by all terms of the Trust agreements[3] and to make contributions to the Trusts for each hour worked by any of its employees who performed construction or general laboring work within the meaning of the designated collective bargaining agreements and within the geographical coverage of these agreements. The prehire agreement also bound the employer to any amendments, modifications or changes executed by the Union and the employers associations with respect to contributions to the Trusts.
 
 
 4
 The trust agreements require the employer to make monthly reports to the Trusts which provide the name, classification, social security number, hours worked and the amount of contribution earned by each covered employee. The agreements provide that the employer shall also make all additional reports required by the trustees, and authorize the trustees to arrange for an audit by independent certified public accountants of the payroll records of any employer in connection with potential defaults with respect to contributions and/or reports. The agreements further provide that, in the event of default in payments, the employer must pay all expenses of collection incurred by the trustees, including but not limited to attorneys' fees, court costs and accounting costs.
 
 
 5
 The Company did not submit the reports and did not pay contributions. In response, the Union and the Trusts, on August 2, 1977, brought this action against the Company under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 185 (1982), seeking specific enforcement of the prehire agreement for contributions allegedly owed by the Company to the Trusts.[4] The Union and the Trusts claimed that, because the Company had not submitted the reports required by the trust agreements, they would be unable to prove damages with the specificity required by the law of damages, and thus that the Court should order the Company to specifically perform its obligation to submit accurate reports on the contributions due and to pay the contracted amount per hour for all covered employees into the Trusts. Although the plaintiffs' complaint is ambiguous, we construe it as also requesting the Court to order a compliance audit, if necessary, and attorneys' fees and costs.
 
 
 6
 The Company moved for summary judgment, and attached an affidavit by its president, Mr. Robert Hroch, which admitted that he signed the participation agreement and, significantly, admitted that after the agreement was signed, the Company had employed persons referred to in the applicable collective bargaining agreements. The Company contended that the agreement was unenforceable, however, because the Union had not obtained majority support among the Company's employees. The district court granted the motion, 484 F.Supp. 582, but this Court reversed and remanded for a determination of the amount which the Company owed the Trusts.
 
 
 7
 On remand, the Court determined that the Company was not required to make any contributions to the Trusts because the Union and the Trusts failed to prove that the allegedly covered employees were workers of the type covered by the collective bargaining agreements and failed to prove that the employees worked within the geographical areas covered by the agreements. Finally, the court determined that, although the evidence showed that the Company employed one "construction or general laborer" within the covered geographical area, the Union and the Trusts had not introduced into evidence a collective bargaining agreement to which the Company had agreed to be bound. The court noted that the plaintiffs introduced an agreement between the Union and the Omaha Building Contractors Employers Association while the participation agreement referred to this Omaha employers organization by its former name, the Associated General Contractors Employers Association of Omaha, Nebraska.
 
 
 8
 The Union and the Trusts appeal.
 
 
 9
 II. DISCUSSION.
 
 
 10
 A. Compliance with the Trust Agreements.
 
 
 11
 The appellants contend that the district court failed to try the case consistent with this Court's remand; that the district court erred in holding them to a strict standard of specificity of damages when their action was for specific performance and not for damages; that the lack of more specific proof was due to the Company's failure to fulfill its obligation under the trust agreements to keep accurate records; and that the court's ruling is contrary to the evidence. The Company contends that the court on remand complied with this Court's mandate. It contends that the plaintiffs failed to meet their burden of proof for specific performance of the participation agreement because they failed to show that any of the Company's employees were covered by the collective bargaining agreements referred to in the prehire agreement.
 
 
 12
 After carefully reviewing the record and the arguments of the parties, we agree with the appellants that this case was improperly tried and that the district court's ruling is contrary to the evidence and, thus, we remand again for further proceedings. The district court apparently proceeded on the theory that the burden of proof was entirely on the Union to prove not only that contributions were due, but to prove the exact amount of contributions due. The problem with this approach is that the plaintiffs' complaint admitted that, because the Company had failed to comply with its trust obligation to keep and submit accurate payroll reports and contributions, they would be unable to prove damages with the specificity required by the law of damages, and thus pled for specific performance of the prehire agreement and the trust agreements. The attorney for the Union and the Trusts was of little assistance to the district court in determining what was entailed by their theory of specific performance. We understand their claim, however, as one for specific application of the terms of the trust agreements to which the Company was bound.
 
 
 13
 The plaintiffs introduced into evidence exhibits three through six, which are the agreements and declarations of trust for the Pension, Health and Welfare, Holiday and Training Trusts referred to in the prehire agreement. Each agreement contains a similar section on the procedures to be followed in the reporting and collection of contributions due the Trusts.
 
 
 14
 Article V of the Holiday Trust Agreement, for example, provides as follows: Section One sets forth the employer's obligation to calculate and submit the required amount of contributions. Section Two discusses the duration of the agreement. Section Three provides that the employer "shall furnish the name, classification, social security number and hours worked of any and all employees described herein and employed by such employer during such month and shall remit the same to the Trustees before the thirtieth day of the month following the month such contribution was earned, together with the amount specified in the existing collective bargaining agreement." Section Five provides that "an employer in default on payments for thirty days may be required to pay such reasonable rate of interest as the Trustees may fix on the money due to the Trustees from the date when the payment was due to the date when full payment is made, together with all expenses of collection incurred by the Trustees including but not limited to attorney fees, court costs and accounting costs." Section Six provides that the employer "shall make all reports on contributions required by the Trustees. The Trustees may at any time have an audit made by independent certified public accountants of the payroll and wage records of any Employer in connection with the said contributions and/or reports at the expense of the Employer." Although all of the trust agreements provide that the trustees may direct an audit of the employer's books, the Health and Welfare, Pension, and Training Fund Agreements imply that the costs of an audit will be borne by the employer only if a "default" in payments is proved.
 
 
 15
 Accordingly, the plaintiffs brought this suit in district court and introduced evidence to show that the Company was in "default" on payments to the trusts. We agree with the appellants that it was not necessary for them to prove an exact amount of damages in order to obtain an order compelling the Company to specifically perform its obligation to make contributions. It was only necessary for them to prove by a preponderance of the evidence that the Company had employed a "construction or general laborer" within the relevant jurisdictions while the agreement was in effect, but had not submitted any trust contributions. The exact amount of contributions due could then have been determined by the court through a court-ordered audit at the Company's expense.
 
 
 16
 After carefully reviewing the record, we find that the plaintiffs did prove by a preponderance of the evidence that the Company was in default on payments due the Trusts. First, Mr. Hroch's uncontroverted affidavit attached to the summary judgment motion on the first appeal admitted that his Company "has employed certain persons at various times from and after June 9, 1975, with job descriptions similar or identical to those" covered by the applicable collective bargaining agreements. The appellate arguments of the parties on brief and at oral argument assured the Court that there was a genuine case or controversy in that the Company would owe some payments if the agreement was enforceable despite the Union's nonmajority status. Second, Mr. Hroch, in his deposition at pp. 13-17, admits that his Company has hired several construction or general laborers within the relevant time period and geographical area. Third, the Union's business agent and its business manager testified--without refutation by the Company--that the Union sent laborers to work for the Company in the relevant time period and jurisdiction, and had observed several laborers working for the Company in the relevant time period and jurisdiction. Fourth, a preliminary "audit" of the Company's incomplete records by the Union's secretary revealed that the Company employed fifteen workers in 1975, ten workers in 1976 and eleven workers in 1977. Although the Company had failed to meet its obligation under the trust agreements to keep accurate account of the craft designations of its employees, and the geographical location of the work sites, the records revealed that it was more likely than not that the Company, which engages in demolition work, employed "construction or general laborers" during the 1975 to 1977 period and that at least a few of them worked within the relevant geographical area. The Company's defense did not rebut this evidence, but simply showed that, because the Company failed to comply with its obligation to keep accurate records, the plaintiffs could not prove with specificity which workers were covered by the agreement and how much was owed. Because the evidence clearly indicates that the Company is in default with respect to some undetermined amount of payments, we must remand for further proceedings consistent with the following directives.
 
 
 17
 The first issue which must be addressed is the duration of the prehire agreement which was signed on June 9, 1975. The relevant standard was recently set forth in the decision of this Court in Contractors Health & Welfare Plan v. Harkins Construction & Equipment Co., 733 F.2d 1321 (8th Cir.1984). In that case, we noted the voluntary nature of prehire agreements and held that such an agreement may be repudiated by conduct "sufficient to put the union and the employees on notice that the agreement is terminated." Id. at 1326. We further explained that a "mere breach of contract ordinarily will not suffice to establish repudiation."[5] Applying these standards to the record in this case, we find that the Company repudiated the prehire agreement on the date that the Union began picketing Company projects in the summer of 1977 or the date on which this action was commenced, whichever was earlier.
 
 
 18
 Next, in light of the preponderance of the evidence that the Company is in default on at least some trust contributions, and in view of the Company's failure to properly report the sums due, the court shall order a complete audit by an independent certified public accountant,[6] of the Company's and the Union's books for the period of time the agreement was effective, with costs and all fees to be paid by the Company. The auditor shall have access to any records necessary to make an accurate determination of the amounts due, and may contact present or former Company employees if necessary. The court shall then require the Company to pay to the trustees the amount due, plus interest thereon "at such reasonable rates as the trustees may fix on the money due to the trustees from the date when the payment was due to the date when full payment is made." Agreement and Declaration of Trust Between the Construction Laborers' Local No. 1140 and the Omaha Building Contractors Employers Association and the Council Bluffs Contractors Association (1972) at 10.
 
 
 19
 B. Attorneys' Fees, Audit Costs and Other Collection Costs.
 
 
 20
 The appellants contend that the district court erred in not awarding them attorneys' fees, audit costs and all other reasonable costs of collecting the Company's delinquent trust payments. They argue that because it is clear that the Company is in default on payments, the court must grant them all costs and fees as authorized by sections 306(a), 29 U.S.C. Sec. 1145 (1982), and 306(b)(2), 29 U.S.C. Sec. 1132(g)(2), of the Multiemployer Pension Plan Amendments Act of 1980. Although it is likely that fees and costs are due under these sections, we need not reach this issue because all of the applicable trust agreements provide that an employer shall pay all costs incurred in collecting delinquent payments.[7]
 
 
 21
 Accordingly, after the court determines the amount of contributions which the employer owes and to which the employees the contributions will be credited, it shall award to the Trusts the reasonable costs of collecting the delinquent contributions, including attorneys' fees and the costs of the independent audit. Finally, we find that the Union must bear the cost of the one-day "audit" which its Secretary conducted of the Company's books because the audit was of little use in resolving the issues before the court, and because the Company must pay for the complete audit by an independent certified public accountant on remand.
 
 
 22
 For attorneys' fees and costs of the appellate work, it is the practice of this Court that these fees and costs will be determined by this Court. We therefore order the appellants to file a documented bill of fees and costs for the work on this appeal[8] to this Court at the direction of the Clerk of this Court. Both parties may file briefs at the direction of the Clerk of this Court supporting their positions on the proper amount of fees and costs to be awarded.
 
 
 23
 C. Alter Ego.
 
 
 24
 The appellants next contend that the district court erred in finding that they failed to prove that the Company is the alter ego of Robert Hroch, its president. Mr. Hroch signed the prehire agreement on behalf of his Company. Because the corporation has been dissolved for failure to pay the occupational tax, the appellants seek to enforce the obligation to make trust obligations against Mr. Hroch individually.
 
 
 25
 The parties agree that, because this case arises under section 301(a) of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a), federal substantive law applies, although the courts may look to state law for guidance. Seymour v. Hull & Moreland Engineering, 605 F.2d 1105, 1109 (9th Cir.1979). We agree with the Company that there is a presumption that a corporation is a separate entity from its shareholders or officers and the party who wishes to pierce the corporate veil bears the burden of proving that there are substantial reasons for doing so. Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc., 519 F.2d 634, 638 (8th Cir.1975); Puamier v. Barge BT 1793, 395 F.Supp. 1019, 1038 (E.D.Va.1974). Courts have applied a variety of factors in determining whether the corporate entity should be disregarded. In Seymour, 605 F.2d 1105, a case involving recovery of fringe benefit payments, the Court looked at three factors: (1) the amount of respect given to the separate entity of the corporation by its shareholders; (2) the degree of injustice visited on the litigants by recognition of the corporate entity; and (3) the fraudulent intent of the incorporators. In Lakota Girl Scout Council, Inc., 519 F.2d at 638, this Court approved a district court's jury instruction that a corporation's existence is presumed to be separate, but can be disregarded if (1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed, or (6) the corporation is merely a sham. In Walkovszky v. Carlton, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 587, 223 N.E.2d 6 (1966), the court said, "Broadly speaking, the courts will disregard the corporate form * * * 'whenever necessary to prevent fraud or to achieve equity.' " (Citation omitted.)
 
 
 26
 To meet its burden of proving that the Company's corporate form should be disregarded, the appellants first rely on the corporation's dissolution for failure to pay the occupational tax. The Company notes that the general rule is that "so long as there is a statutory right to be reinstated, the proclamation of forfeiture for nonpayment of taxes does no more than forfeit the corporate right to do business, but does not extinguish the corporation as a legal entity." 16A Fletcher, Cyclopedia of the Law of Private Corporations, Sec. 7998, p. 73. Neb.Rev.Stat. Sec. 21-20,135 (1983) provides that a corporation "whose existence has become inoperative because of dissolution by law for nonpayment of taxes * * * may at any time procure * * * revival of its corporate existence, together with all the rights, franchises, privileges and immunities and subject to all its duties, debts, and liabilities[.]" Neb.Rev.Stat. Sec. 21-20,137 (1983) provides that once the certificate of revival is filed, the corporation stands revived " * * * as if its corporate existence had at all times remained in full force and effect." The Company therefore contends that because there is a possibility that its corporate form will be revived, it would be improper to impose liability against Mr. Hroch as an individual simply because the corporation is presently dissolved.
 
 
 27
 We agree with the Company that the corporation's dissolution for failure to pay the occupational tax is not alone a sufficient reason to order judgment against Mr. Hroch as an individual. Additionally, although this dissolution and our previous discussion of the Company's inadequate records suggests that the corporation also has not followed other necessary corporate formalities, the appellants failed to introduce evidence on this. However, the appellants did present sections of Mr. Hroch's deposition which strongly suggest that he has used the corporate form in an inequitable fashion to avoid its obligations and that unless judgment is entered against him individually, the contributions to the Trusts will never be made, resulting in a fraud on the Trusts. This deposition testimony is produced in the margin.[9] It may be that the type of evidence introduced by the appellants would generally not satisfy the heavy showing necessary to disregard the corporate form. However, in this case, we must also consider the congressional policy reflected in sections 306(a) and 306(b) of the Multiemployer Pension Plan Amendments Act of 1980 that employers make all of their required contributions to pension and health and welfare plans. The Company contends that there is a possibility that it will pay the overdue occupational tax and reinstate its corporate form, but it does not claim that it will do so or has taken steps to do so. Instead, the record in this case reflects that it is much more likely that the Company will not revive its corporate form so that it can avoid its responsibility to make the required payments to the Trusts. Although it is a close question, on the narrow facts of this case, we find that the court erred in holding that Mr. Hroch is not the alter ego of his dissolved corporation, and hold that the judgment entered in this case may be enforced against Mr. Hroch as an individual.
 
 
 28
 Reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 In 1981, the Supreme Court resolved a circuit split on this issue in favor of the position taken by this Court. Jim McNeff, Inc. v. Todd, 461 U.S. 260, 103 S.Ct. 1753, 75 L.Ed.2d 830 (1984)
 
 
 [2]
 The attorney for the Union and the Trusts indicated, at the trial below, that these two organizations are one and the same. The Company introduced no evidence to the contrary. We also note that in Mr. Hroch's affidavit on summary judgment motion at the first trial, he indicated that Associated General Contractors Employers Association of Omaha, Nebraska, was known as the Omaha Building Contractors Employers Association, and had a contract with the Union which was in effect on the day he signed the participation agreement. That these organizations are one and the same is also indicated in the Union's responses to interrogatories submitted by the Company. Accordingly, we find that contrary to the district court's holding, the Company is bound by the collective bargaining agreement between the Union and the Omaha Building Contractors Employers Association
 
 
 [3]
 This obligation is also imposed by section 306(a) of the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. Sec. 1145 (1982), which requires an employer obligated to make contributions to a multiemployer plan to "make such contributions in accordance with the terms and conditions of such plan or such agreement."
 
 
 [4]
 There was some discussion at the trial on remand about wages allegedly due Company employees who were paid at an hourly rate less than that set forth in the applicable collective bargaining agreements. The plaintiffs' complaint, however, only refers to allegedly delinquent contributions to the Trusts. The district court held that the wage claim was raised for the first time on the trial on remand, and thus the issue was not properly preserved. We agree. Accordingly, our opinion only concerns fringe benefit contributions owed by the Company to the Trusts
 
 
 [5]
 Further guidance on this point is provided by the Supreme Court's decision in Jim McNeff, Inc. v. Todd, 461 U.S. 260, 269-70, 103 S.Ct. 1753, 1758-59, 75 L.Ed.2d 830, 838-39 (1984). Although the Court did not decide what specific acts would affect the repudiation of a prehire agreement, it held that in the case at hand, there was no repudiation prior to the filing of the suit, even though the employer had failed to make the required payments for six months and owed $5,316.79. The Court's footnote 11 further suggests that if conduct alone is sufficient to repudiate a prehire agreement, it must be conduct "overtly and completely inconsistent with contractual obligations[.]" 461 U.S. at 1759 n. 11, 103 S.Ct. at 270 n. 11, 75 L.Ed.2d at 839, n. 11
 
 
 [6]
 In accordance with the provisions of the trust agreements, the trustees may name an independent certified public accountant of their choice
 
 
 [7]
 Although only the Pension and Holiday Trust Agreements expressly provide that attorneys' fees are costs of collecting delinquent payments, we construe the terms "collection costs" in the Health and Welfare and Training Trust Agreements as including attorneys' fees. We also construe "collection costs" as including costs for the necessary audit by an independent certified public accountant
 
 
 [8]
 The appellants have not argued for attorneys' fees and costs for the previous appeal. Although these fees and costs might have been available under the Trust provisions, the appellants did not apply for fees and costs and have waived any right they might have for fees and costs on the first appeal
 
 
 [9]
 Q. [Mr. Weinberg] What capacity did you have with Associated Wrecking and Salvage Company?
 A. [Mr. Hroch] I own it.
 * * *
 Q. Is Associated Wrecking and Salvage Company in existence at this time?
 A. You mean as a corporation or as a business?
 Q. Corporation.
 A. No.
 Q. Was it ever dissolved?
 A. For failure to pay the corporate tax.
 * * *
 Q. Did you carry on the business after that, individually?
 A. Yes.
 * * *
 Q. Well, when you started your new operation, when did you start your new operation without the corporation, approximately?
 A. We just continued going on.
 Q. Continued going on. So when the corporation was dissolved, the Associated Wrecking and Salvage Company, you continued on in the business under your own name, is that right?
 A. It was always my business anyway.
 Q. It was always your business anyway?
 A. Didn't make any corporation.
 Q. The corporation was what we term your alter-ego, the same person but different name?
 A. You know, it's just a tax gimmick is all. That's all corporations are.
 Q. Tax gimmick?
 A. Tax deals. Like getting a speeding ticket. It's just a form of taxes.
 Q. So, in other words you owned and controlled the corporation, you own and controlled [sic] the present operation?
 A. That's right.
 Q. And during the period from 1975 to 1980 and even thereafter the business was really Robert Hroch--
 A. The business has always been Robert Hroch.
 Deposition of Mr. Hroch, pp. 26-29.