The **CARPENTERS AMENDED AND RESTATED HEALTH BENEFIT FUND,** and its Trustees, et al., Plaintiffs-Appellees Cross Appellants,

v.

**JOHN W. RYAN CONSTRUCTION CO., INC., Defendant-Appellant Cross Appellee.**

No. 84–5001
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 12, 1985.

Paxton & Barriball, John J. Barriball, Orsen E. Paxton, III, Arlington, Tex., for defendant-appellant cross appellee.

Matthews, Allen & Russell, Jerry Leroy Carlton, Dallas, Tex., for plaintiffs-appellees cross appellants.

Before RUBIN, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

■ The principal issue of this appeal is whether an employer, sued by employee benefit plans for delinquent contributions, may avoid liability for statutory interest and attorney's fees by paying the delinquent contributions after suit is brought but before judgment. We affirm the determination of the district court that the delinquent employer remains liable for interest and attorney's fees sought by the suit to enforce also the obligation for delinquent contributions, despite the employer's payment of the delinquent amounts before judgment.

I.

The Employee Retirement Income Security Act of 1974 ("ERISA"), as further amended and strengthened by the Multi-employer Pension Plan Amendment Act of 1980, both codified at 29 U.S.C. §§ 1001 *et seq.*, provides for federal regulation of employee welfare and benefit pension plans. These statutes also provide jurisdiction in the federal district court to enforce rights and liabilities under the statutes, as well as to enforce rights under the contractual terms of a plan. 29 U.S.C. § 1132.

The defendant employer ("Ryan") executed a written agreement by which it agreed to make contributions, for the benefit of its employees, to several multiemployer benefit plans ("the Plans"). Alleging that Ryan failed and refused to make monthly contributions and reports as required by the terms of the agreement, the Plans and their trustees brought this suit, demanding, inter alia, judgment against Ryan for the unpaid contributions, for interest, and for reasonable attorney's fees.

After suit was brought, Ryan paid approximately $50,000 of unpaid contributions for the previous eight months, and it resumed payment of monthly contributions (although in most months it was from 10 to 90 days delinquent in doing so). The defendant Ryan resisted, however, the demand for interest and attorney's fees, alleging that its payment of the delinquent contributions *prior* to judgment prevented—under the statutory terms—the imposition upon it of liability for interest and attorney's fees.

The district court rejected this contention and entered judgment against the defendant employer Ryan and in favor of the Plans for interest upon the delinquent installments and for the Plan's attorney's fees in the trial court resulting from the litigation. The sole issue raised by Ryan's appeal is whether, under the terms of the statute, Ryan could be liable for collection of attorney's fees and for interest on the delinquent contributions when it had paid the delinquent contributions before judgment was entered (albeit, after suit was brought to enforce payment of the delinquent contributions). For reasons to be stated, we affirm the district court's rejection of this contention.[1]

## II.

To understand Ryan's contention, as well as its fallacy, a resume of relevant statutory history is necessary.

The 1980 amendments to ERISA were prompted by a number of Congressional concerns, which included the need "to alleviate certain problems which tend to discourage the maintenance of" ERISA plans. 29 U.S.C. § 1001a(c). To that end, Section 306 of the Multiemployer Pension Plan Amendments Act of 1980, Pub.L. 96–364, 94 Stat. 1208, codified within 29 U.S.C. §§ 1001 *et seq.*, contained new provisions that authorized remedies to recover from employers who were delinquent in making contributions in accordance with the terms of multiemployer benefit plans. These provisions of Section 306 were codified as 29 U.S.C. § 1145 (requiring an employer by statute to make contributions according to the terms of a plan)[2] and as 29 U.S.C. § 1132(g)(2) (which provided for *mandatory* assessment of interest, penalty (an amount equal to the interest), and reasonable attorney's fees), when an action is filed to enforce the employer's obligation to make payments in accordance with the terms of the plan.[3]

The legislative history, including House and Senate committee reports and an expla-

---

1. On the plaintiff's Plan's cross-appeal, however, we reverse the district court's denial of audit expenses. *See* Part V, below.

2. 29 U.S.C. § 1145 (*"Delinquent contributions"*) (1980) provides:

 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

3. As part of ERISA's civil enforcement remedy, as initially enacted in 1974, the statute provided, 29 U.S.C. § 1132(g): "In any action ... by a participant, beneficiary, or fiduciary, the court in its discretion *may* allow a reasonable attorney's fee and costs of action to either party." (Emphasis added.)

 The 1980 legislation amendment § 1132(g) by re-numbering the previous text as subsection (1) with the provision that this *discretionary* authority did not apply to actions to enforce delinquent contributions, and by adding subsection (2) so as to provide for *mandatory* assessment of interest, penalty, and attorney's fees in such cases. As amended in 1980, § 1132(g) (*"Attorney's fees and costs; awards in actions involving delinquent contributions"*) provides (emphasis added):

 (1) In any action under this subchapter (*other than an action described in paragraph (2)*) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs to either party.

 (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title *in which a judgment in favor of the plan is awarded,* the court shall award the plan—

 (A) the unpaid contributions

 (B) interest on the unpaid contributions

 (C) an amount equal to the greater of—

 (i) interest on the unpaid contributions, or

 (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

 (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

 (E) such other legal or equitable relief as the court deems appropriate.

 For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

nation by House sponsor in floor debate, has been succinctly summarized in *Central States Southeast and Southwest Area Pension Fund v. Alco Express Company*, 522 F.Supp. 919, 925–28 (E.D.Mich.1981). Without reiteration of this detailed summary, it is sufficient to note that the House version provided for discretionary assessment of liquidated damages and attorney's fees in delinquent-employer suits, while the Senate version (which was adopted in the final enactment of Section 306) provided for mandatory assessment. The Senate report, in explaining its version, pointed out the serious problem created by the "[f]ailure of employers to make promised contribution in a timely fashion [, which] imposes a variety of costs on plans," and it concludes: "The intent of this section is to promote the prompt payment of contributions and assist plans in recovering the costs incurred in connection with delinquencies." *Central States, supra*, 522 F.Supp. at 927, 928 (quoting Staff of Senate Comm. on Labor and Human Resources, 96th Cong.2d Sess., *S.1076, The Multiemployer Pension Plan Amendments of 1980: Summary and Analysis of Considerations (Comm. Print* 1980) at 43–44.

### III.

In arguing that nevertheless under present facts double-interest and attorney's fees cannot be assessed against it, the defendant employer Ryan points out that the statutory language of 29 U.S.C. § 1132(g)(2) (quoted in full in note 3, *supra* ) provides that such mandatory penalties must be assessed only in delinquent-employer suits "in which a *judgment* in favor of the plan is awarded." (Emphasis added.) Pointing out that it had paid the delinquent contributions prior to judgment, Ryan argues that under the plain terms of the statute it cannot be assessed with attorney's fees and penalty double-interest.

In the present instance, the action by the plaintiff Plans sought monied judgment not only for the unpaid contribution owed by Ryan, but also for interest and statutory penalty (equal to the interest) for their untimely payment in accordance with the terms of the plans—as well as for attorney's fees for collection, as authorized both by the plans themselves and by the statute. By amended complaint, the Plans also sought a judgment decreeing that they were entitled to receive the contributions on a timely basis.

In our view, not only the demands for unpaid contributions but also the demands for ancillary relief (interest, penalty, attorney's fee; decree of entitlement to receive contributions on a timely basis) are included (when coupled with a demand for unpaid contributions) within the Congressionally-intended "action ... to enforce section 1145 [*i.e.*, the employer's obligation to make "contributions in accordance with the terms and conditions of such plan"]" that, upon successful judgment, mandatorily entitles the plaintiff to statutory relief of attorney's fees and penalties under § 1132(g)(2). Here, although the final judgment did not include an award for the unpaid contributions themselves (because they had been paid by the employer after suit but prior to judgment), it did grant judgment in favor of the Plans for unpaid interest ($4,672.95) on the delinquent contributions, for the statutory ("double-interest") penalty ($4,672.95), and for award attorney's fees incurred in the district court ($3,000; conceded to be reasonable)—all or any of which the defendant Ryan had refused to pay or tender prior to judgment, even though the Plans' complaint had prayed for same and even though, at the time the complaint was filed, the delinquent employer was assessable with such if the Plans' suit proceeded to "judgment in favor of the plan," § 1132(g)(2). In affording such relief, the final judgment also decreed that the "defendant is obligated to pay contributions to plaintiffs on a timely basis."

We thus find this final judgment to be "a judgment in favor of the plan" in an "action to ... enforce section 1145," within the meaning of § 1132(g)(2). The circumstance that the defendant complied with *part* of the demand sought by this suit

against an admittedly delinquent employer under § 1145 did not moot the plaintiff Plans' remaining demands against the delinquent employer, who resisted liability for them in the trial court prior to judgment. The judgment in this suit against a delinquent employer to enforce his obligations under § 1145 to make payments in accordance with the terms of the employee benefit is no less a "judgment in favor of the plan" under § 1132(g)(2) than would have been one that decreed not only this relief but also—had the employer *not* paid his delinquent contributions after suit was filed—the delinquent contributions, which were *also* demanded by the action.

The Seventh Circuit indicated the same view, although by way of dicta (since the appeal was dismissed for lack of an appealable final judgment). In *Gilles v. Burton Construction Company*, 736 F.2d 1142, 1146 n. 6 (7th Cir.1984), that court stated:

> After suit is filed, we doubt that employers who are delinquent in their contributions can avoid the mandatory relief provisions of section 1132(g)(2) through the device of offering to pay only the overdue contributions. A settlement will require the agreement of the parties on the entire case—not merely part of the case.

Similarly, in the only other reported decision in point that we could find, in *Bennett v. Machined Metals Co., Inc.*, 591 F.Supp. 600, 604–05 (E.D.Pa.1984), the court held the employer—who had voluntarily paid most of the delinquent contributions, but tardily, before suit was filed—liable for the statutory interest, penalty interest, and attorney's fees under 29 U.S.C. § 1132(g)(2). The court did so on the basis that the Congressional purpose included a remedy not only for the recovery of delinquent contributions but, as well, for "costs incurred by multiemployer plans, such as lost revenue and collection and litigation expenses, as a result of employer delinquencies." 591 F.Supp. at 604.

The defendant Ryan cites no relevant authority to the contrary. The expressions in the three decisions it relies upon are inapposite and distinguishable, as the dis-

trict court correctly held in its opinion (to which we are indebted for its excellent analysis of the issues of this litigation and authorities relevant to them).

### IV.

We are re-enforced in this construction of the statutory provision by its statutory history and purpose, discussed in Part II, *supra.*

Prior to its amendment in 1980, ERISA provided only for discretionary assessment of attorney's fees; by the amendment, as to delinquent employers, mandatory assessment not only of attorney's fees but also of interest and penalty interest was provided. *See* note 3, *supra; Gilles v. Burton Construction Company*, 736 F.2d 1142, 1143 & n. 2 (7th Cir.1984). The statutory purpose is to provide for employee benefit plans a greater ability to collect delinquent employer contributions and to compensate funds for the loss of use of delinquent payments and for the costs of collecting delinquencies. With this statutory purpose of strengthening remedies against a delinquent employer, it is not readily conceivable that Congress intended by the 1980 language to make attorney's fees awardable only if a plan proceeded to judgment for the unpaid contributions themselves, whereas pre-1980 a pre-judgment tender of amounts owed would not have defeated the discretionary award of them to a plan that was the prevailing party in a suit filed to enforce obligations under an ERISA plan.

Congress intended by § 1132(g)(2) to provide "an additional incentive for timely payment" of employer contributions. *Central States, supra,* 522 F.Supp. at 926 (quoting Senate report). The legislative history of ERISA's civil enforcement provisions "indicates that Congress intended that the enforcement provisions should have teeth: the provisions should be liberally construed 'to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act.'" *Laborers' Fringe Benefit Funds v. Northwest Concrete & Construc-*

*tion, Inc.,* 640 F.2d 1350, 1352 (6th Cir. 1981).

To construe the statute as Ryan would have it—that a judgment for the unpaid contributions themselves is a condition precedent to obtaining attorney's fees against a delinquent employer, even though judgment in the suit against him (instituted at a time when he was delinquent) has been granted in favor of the plan affording it relief for an employer's failure to make these contributions timely in accordance with the terms of the plan—would flout this statutory purpose, is devoid of any support in the legislative history, and would (contrary to the specific Congressional intent) relieve a delinquent employer of a potential liability for attorney's fees to which he was subject before the 1980 amendments that were designed to increase the sanctions against such an employer. In fact, Ryan's interpretation of § 1132(g)(2) would reward bad faith employers who insist on the spectre of adverse judgment before making payments they know or even concede to be delinquent and, at the same time, penalize good faith employers who litigate delinquencies through judgment because of a genuine dispute about whether money is owed.

In summary, therefore: the district court did not err in awarding interest, penalty, attorney's fees, and costs under § 1132(g)(2), notwithstanding the defendant's post-suit, pre-judgment payment of the delinquent contributions themselves.

### V.

■ The plaintiff Plans, on cross-appeal, contend that the district court erroneously denied stipulated audit expenses of $1,383.19. The parties stipulated that the audit was "a part of a regular auditing program, rather than due to a suspected deficiency of Defendant's payment of contributions. The audit determined that additional contributions were owed."

Based on this stipulation, the district court denied the audit expenses. The district court reasoned that the sole purpose of the annual audit required by the Plan was "to discover delinquencies and irregularities" and that he was cited to no authority that the allowance of recovery of the audit expense should be allowed as appropriate "legal or equitable relief" under § 1132(g)(2)(E) (quoted at note 3, *supra*).

However, the district court overlooked that recovery of these audit expenses was sought by the plaintiff Plans not only on the basis of § 1132(g), but also on a contractual basis as provided by the employee benefit plans. R.I., p. 15. ERISA provides that a civil action may be brought by a fiduciary to obtain appropriate equitable relief to enforce any provisions of the terms of the plan, 29 U.S.C. § 1132(a)(3)(B)(ii), while 29 U.S.C. § 185 of the Labor Relations Act, as amended—upon which basis jurisdiction was also pleaded by the complaint—affords jurisdiction to enforce the contractual terms of a collective bargaining agreement incorporating (as here) the employee benefit plans, *Gilles v. Burton Construction Company,* 736 F.2d 1142, 1143 n. 2 (7th Cir.1984).

In the present instance, the employee benefit plans provide that the Plans are entitled to recover from Ryan "all expenses of collection incurred by the Board of Trustees (including, but not limited to, court costs and reasonable attorney's fees)." R.I, 41, 43. In interpreting a similar plan provision, the Eighth Circuit recently held that the plan was entitled to recover, contractually, the costs of the audit used to establish the delinquency in payment, as part of the contractual liability to pay all costs incurred in collecting delinquent payments. *Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan v. Hroch,* 757 F.2d 184, 189 (8th Cir.1985).

We find the reasoning in *Hroch* to be persuasive. Though the *Hroch* audit was not a routine audit undertaken to ferret out delinquencies, we discern no reason why routine audit expenditures uncovering delinquencies and ultimately leading to a successful collection effort are any less collection expenses than audit expenditures undertaken specifically to discover whether

the employer is delinquent in his contributions. The audit is a necessary first step in collection of any delinquency. The delinquency exists at the time of the audit, and, as the district court recognized, uncovering the deficiency is the purpose of the audit. The necessary first step in collecting an existing delinquency, the audit, we believe, is an expense of collection recoverable under the contractual terms of the employee benefit plans in this case, where such audit results in the discovery of the deficiency for which suit is brought.

The district court judgment will therefore be amended so as to provide additionally for recovery of the audit expenses of $1,383.19.

### VI.

 The parties also have stipulated that $2,500 is a reasonable attorney's fee for this appeal. In light of the stipulation, we may award the fees rather than remanding for a determination by the district court. *Martin v. Heckler,* 754 F.2d 1262, 1265 & n. 6 (5th Cir.1985). Pursuant to § 1132(g)(2)(D), therefore, we will award the plaintiff Plans an additional attorney's fee of $2,500 for services on this appeal.

### Conclusion

For the reasons assigned, the district court judgment is affirmed in its award of interest, penalty ("double interest"), and attorney's fees; however, it is AMENDED so as to award the additional sum of $1,383.19 for audit expenses and an additional amount of $2,500 for appellate attorney's fees, with the former amount to bear interest as provided in the district court judgment from the date of its entry in that court, Fed.R.App.P. 37, and the latter amount to bear interest at the same rate but from date of the entry of this decision in this court. As thus AMENDED, we AFFIRM the district court judgment. The defendant-appellant is to pay all costs.

AMENDED AND AFFIRMED.