TRUSTEES OF the CONSTRUCTION INDUSTRY AND LABORERS HEALTH AND WELFARE TRUST; Trustees of the Construction Industry and Laborers Joint Pension Trust; Trustees of the Construction Industry and Laborers Vacation Trust; and Trustees of the Southern Nevada Laborers Local 872 Training Trust, Plaintiffs,

v.

B. WITT CONCRETE CUTTING, INC., a Nevada Corporation; and Merchants Bonding Company, Defendants.

No. 2:08–CV–667–ECR–RJJ.

United States District Court, D. Nevada.

Jan. 22, 2010.

Adam P. Segal, Andrew S. Brignone, Xanna R. Hardman, Michael V. Infuso, Zachary P. Takos, Brownstein Hyatt Farber Schreck, LLP, Las Vegas, NV, for Plaintiffs.

James T. Winkler, Littler Mendelson, PC, Norman H. Kirshman, Norman H. Kirshman PC, Las Vegas, NV, for Defendants.

### Order

EDWARD C. REED, JR., District Judge.

Plaintiffs claim that Defendant B Witt Concrete Cutting, Inc. ("B Witt") failed to timely remit employee benefit contributions as required by the Employee Retirement Income Security Act ("ERISA"). Defendant Merchants Bonding Company ("Merchants") is a surety on two Nevada State Contractors Board bonds issued to B Witt, guaranteeing payment to claimants of unpaid employee benefits. Now before the Court is Plaintiffs' motion for summary judgment (# 27), seeking summary judgment in the amount of $333,312.25 in liquidated damages, interest, audit fees, attorney's fees, and costs.

The motion (# 27) is ripe, and we now rule on it.

### I. Factual and Procedural Background

B Witt is an employer that is bound by various agreements and the provisions of ERISA to pay employee benefit contributions to the trust funds that constitute the Plaintiffs in this action. Plaintiffs' Complaint (# 1), filed on May 22, 2008, alleges that B Witt "has not paid, and continues not to pay, certain payments due" to Plaintiffs. (Compl. ¶ 6(# 1).) Plaintiffs further allege that B Witt failed "to submit monthly remittance reports and to make timely contributions based upon those reports . . . on behalf of each employee that performs covered work." (Id. ¶ 7.) Also, Plaintiffs allege that Merchants is surety on two bonds issued to B Witt, and that B Witt's delinquencies are covered under the terms of the bonds. (Id. at ¶¶ 12–13.)

In this case, Plaintiffs seek damages for the period from January 2007 through June 2009. Plaintiffs have filed a separate action, 2:09–CV–2051–ECR–LRL, seeking damages on essentially the same basis for the period after June 2009, and adding an additional defendant, William J. Witt. We issued a minute order (# 33), providing the parties an opportunity to brief the issue of whether the two cases should be consolidated. Plaintiffs have opposed (# 34) consolidation, arguing that consolidation would delay a ruling on the pending motion for summary judgment (# 27), and that it would complicate matters with regard to claims arising after June 2009. Defendants have not filed a brief with regard to consolidation in the present case, but they did file a brief (# 14) in case number 2:09–CV–2051–ECR–LRL. Defendants do not oppose consolidation, though they express concerns relating to the alleged individual liability of William J. Witt, and the possibility that consolidation would truncate discovery in the later-filed case. The parties' concerns regarding consolidation are, for the most part, well taken.[1] The two cases, therefore, will not be consolidated.

---

1. Plaintiffs express concern that consolidation would render them unable to pursue any claims arising after June 2009. (See Pls.' Opp. at 4(# 34).) This concern is unfounded:

Plaintiffs filed the pending motion for summary judgment (# 27) on August 7, 2009. Defendants opposed (# 31) the motion (# 27), and Plaintiff replied (# 32).

## II. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED.R.CIV.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form namely, depositions, admissions, interrogatory answers, and affidavits only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED.R.CIV.P. 56(c); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment is not proper if material factual issues exist for trial. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir.1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. *Id.*

---

consolidation means just that, consolidation, not abandonment of one of the lawsuits in favor of the other. Nevertheless, we agree that consolidation would result in some degree of procedural complication because the

present case already has reached the summary judgment stage, while the other was only recently filed. This procedural complication may outweigh other efficiencies that consolidation might provide.

### III. Discussion

Defendants present several different arguments in opposition to Plaintiffs' motion for summary judgment (# 27). For the reasons discussed below, each of these arguments will be rejected, and Plaintiffs' motion for summary judgment (# 27) will be granted.

#### A. The Allegations in the Complaint (# 1) are Sufficient

One of Defendants' primary arguments in opposition to the motion for summary judgment is based on the sufficiency of Plaintiffs' Complaint (# 1). B Witt employs workers from both Local 872 and Local 702 of the Laborers International Union. Plaintiffs collect payments from B Witt for both Local 872 and Local 702 employee benefit contributions, but Local 702 wage and employee benefit contribution rates are lower than Local 872 rates. Defendants assert that the present dispute between the parties arose when Plaintiffs suspected that B Witt was making trust contributions at the lower Local 702 rates for work performed on Local 872 projects. (Defs.' Opp. at 3(# 31).) The suspicion that the wrong rates were being paid led to an audit for the period December 1, 2006 to March 31, 2008, which revealed that B Witt was not paying wages and benefits at the wrong rate. (*Id.* at 4.) Nevertheless, the audit also revealed that B Witt had failed to pay to Plaintiffs required employee benefit contributions in the amount of $224,497.99. (*Id.* at 4; Audit Summary, Pls.' MSJ, Ex. 6 (# 27–16).) Defendants' argue that these contributions have since been paid, so Plaintiffs' Complaint therefore "failed and ... should be dismissed in its entirety, and, accordingly, Plaintiffs' Motion for Summary Judgment should be denied." (Defs.' Opp. at 6(# 31).)

Plaintiffs' allegations, however, describe more than just a claim for unpaid contributions. The Complaint not only alleges that B Witt was required to make such contributions and that it had failed to do so, but also that "[t]he Master Agreement, the Trust Agreement, and 29 U.S.C. § 1132(g) provide for assessment of audit fees, court costs, expenses, interest, attorneys' fees and liquidated damages against an employer in the event the employer defaults in making payments to [Plaintiffs] and legal proceedings are required to recover such payments." (Compl. ¶ 8(# 1).) Thus, the damages that Plaintiffs now seek, namely, "outstanding interest and liquidated damages, plus audit fees, attorney's fees, and costs, totaling $333,312.25" (Pls.' MSJ at 2(# 27)), are fairly encompassed by the allegations of the Complaint.

Moreover, the Federal Rules of Civil Procedure provide that, with the exception of default judgments, "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." FED. R. CIV. 54(c); *see also In re Bennett,* 298 F.3d 1059 (9th Cir.2002) ("So long as a party is entitled to relief, a trial court must grant such relief despite the absence of a formal demand in the party's pleadings."); *United States v. Nat'l City Lines,* 134 F.Supp. 350, 355 (N.D.Ill.1955) (noting that a "plaintiff is not bound to prove all that he alleges, nor is he limited in a judgment in his favor to the relief he has demanded in his complaint"). As such, Defendants' arguments based on the purported insufficiency of the allegations in Plaintiffs' Complaint (# 1) are without merit.

#### B. Plaintiffs are Entitled to Liquidated Damages and Interest

B Witt is required, under its agreements and the provisions of ERISA, to pay liquidated damages in the amount of 20% of any unpaid contributions, plus interest at a rate of 14% per annum. (Pls.' MSJ

Ex. 3(A) at 6 and Amend. 2 (# 27–4), Ex. 3(B) at 6 and Amend. 2 (# 27–5), Ex. 3(C) at 6 and Amend. 2 (# 27–6), Ex. 3(D) at 6 and Amend. 2 (# 27–7).) Defendants' opposition (# 31) presents several arguments why the liquidated damages and interest claimed by Plaintiffs should be either reduced or denied in their entirety. Each of Defendants' arguments is without merit.

Title 29 U.S.C. § 1132(g)(2) provides that when an action for unpaid contributions is brought by the fiduciary of an ERISA plan and a judgment is awarded in favor of the plan, the court "shall" award the following:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Where section 1132(g)(2) applies, an award of the enumerated items is "mandatory and not discretionary." *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir.1996) (quoting *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir.1984)). "To be entitled to a mandatory award under § 1132(g)(2), the following three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award." *Id.*

(citing *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir.1989)).

■ Defendants argue that the liquidated damages provision of section 1132(g)(2)(C)(ii) does not apply here for several reasons. First, Defendants assert that prior to the instigation of this lawsuit, Plaintiffs had routinely granted B Witt's requests for waivers of liquidated damages for late payments of employee benefit contributions. (Defs.' Opp. at 7–8(# 31).) Also, Defendants seek to blame "the conduct of the Plaintiff trust funds and their attorneys" for the late filing of reports and payment of contributions since the instigation of this lawsuit. (*Id.* at 8.) Such facts, however, even if true, are simply irrelevant. Defendants have not presented, nor have we discovered, any authority suggesting that B Witt might be entitled to relief from its obligations under its agreements and the provisions of ERISA for such reasons.

Next, Defendants suggest that "there is nothing in the Local 702 contract setting forth the time in which trust fund contributions are to be paid or are to be considered delinquent." (*Id.* at 9.) As such, Defendants argue that no liquidated damages or interest may be awarded for late filing of reports and payments relating to Local 702 work. As Defendants acknowledge, however, B Witt's agreement with Local 702 provides that rules and regulations or by-laws adopted by Plaintiffs are incorporated by reference, and binding on B Witt. (*Id.; see* Pls.' MSJ Ex. 1(b) at 6–8 (# 27–1).) This includes the "Collection Policy and Procedures," a document which explicitly sets the due dates for reports and payments. (Pls.' MSJ Ex. 3(E) at 2 (# 27–8).) The circumstance that the deadlines appear explicitly in the Local 872 contract, but are only incorporated by reference in

the Local 702 contract, is immaterial. As such, Defendants' arguments in this regard are rejected.[2]

Defendants further argue that liquidated damages and interest should not be awarded here because any contributions that Defendants owed at the time this lawsuit was filed have since been paid. This argument rests on non-binding authority holding that where delinquent contributions are paid after the filing of a lawsuit, but before entry of judgment, liquidated damages may not be awarded pursuant to section 1132(g)(2)(C). *See Mich. Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 388 (6th Cir. 1991). The Ninth Circuit, however, has squarely rejected such an interpretation of section 1132(g)(2). In the Ninth Circuit, the award of damages under section 1132(g)(2)(B)-(E) is mandatory "notwithstanding the defendant's post-suit, prejudgment payment of the delinquent contributions themselves." *Nw. Adm'rs, Inc.*, 104 F.3d at 258 (quoting *Carpenters Amended & Restated Health Benefit Fund v. John W. Ryan Constr. Co.*, 767 F.2d 1170, 1175 (5th Cir.1985)). Here, it is undisputed that B Witt owed $199,940.43 in unpaid contributions as of the time this lawsuit was filed. (*See* Pls.' Reply at 5(# 32).) As such, an award pursuant to section 1132(g)(2)(B)-(E) is mandatory, even though the delinquent contributions themselves have since been paid.

Except as noted above, Defendants have not disputed Plaintiffs' calculations regarding the amount of liquidated damages and interest that accrued as a result of B Witt's delinquencies. As such, we conclude that B Witt is liable for $280,932.90 in liquidated damages and $24,956.36 in interest.

*C. Plaintiffs are Entitled to Audit Costs*

As noted above, the provisions of the "Collections Policy and Procedures" (Pls.' MSJ Ex. 3(E) at 2 (# 27–8)) adopted by Plaintiffs are binding on B Witt. That document provides that "all ... audit fees ... be paid by the employer, for whom legal action was required to carry out any matter herein, whether or not such actions result in a delinquency finding." (*Id.* ... ¶ II(C).) The trust agreements also provide that if the Board of Trustees "consults, retains or uses" an auditor with respect to an employer who defaults in making its contributions, audit fees "shall be added to the obligation of the Individual Employer who is in default," along with their "reasonable expenses incurred by the Board of Trustees in connection with such suit or claim." (Pls.' MSJ, Ex. 3(A) at 12 (# 27–4); Ex. 3(B) at 12 (# 27–5); Ex. 3(C) at 12) (# 27–6); (Ex. 3(D) at 12 (# 27–7).) On this basis, Plaintiffs seek to recover fees totaling $3638.75 for the audit that revealed the extent of B Witt's delinquencies, providing a basis for bringing this suit. (*See* Audit Summary, Pls.' MSJ, Ex. 6 (# 27–16).)

 Defendants assert that B Witt had been audited in the past, but not charged

**2.** We note that the only copy of the "Collection Policy and Procedures" in our record relates to the "Laborers Local 872 Joint Trust Funds," and that no corresponding copy relating to Local 702 has been provided. We also note, however, that Plaintiffs have asserted, and Defendants have not quite disputed, that the same policies and procedures were adopted with regard to Local 702 trust fund collections. *See* Pls.' Reply at 9(# 32); Defs.' Opp. at 9(# 31) (stating that "there is nothing in any of the trust documents submitted by Plaintiffs in their Motion for Summary Judgment describing any timeline for the submission of Local 702 contribution reports.") As such, it is appropriate for us to conclude, based on the record before us and the positions of the parties, that the "Collection Policy and Procedures" should be applied to B Witt's obligations regarding both Local 872 and Local 702.

audit fees. (Defs.' Opp. at 6(# 31).) This fact, even if true, is irrelevant. The circumstance that the Plaintiffs may have waived their rights with regard to past audits does not mean that they are not entitled to assert those rights here with regard to the audit at issue.

■ Defendants also argue that an award of audit fees is inappropriate because Plaintiffs no longer assert a claim for unpaid contributions. (*See id.* at 6–7(# 31).) At the time this lawsuit was brought, however, there was a substantial amount of required contributions that had not been paid, a delinquency that was initially revealed by the audit. (*See* Pls.' Reply at 5(# 32).) Additionally, Plaintiffs continue to seek damages that are related to the delinquencies revealed by the audit, namely, liquidated damages, interest, attorney's fees, and audit costs. As such, under the terms of B Witt's agreements and 29 U.S.C. 1132(g)(2)(E), an award of audit fees is appropriate.

### D. Plaintiffs are Entitled to Attorney's Fees and Costs

B Witt's agreements provide for an award of reasonable attorney's fees and costs incurred in connection with a suit to recover delinquencies in employee benefit contributions. (*See* (Pls.' MSJ, Ex. 3(A) at 12 (# 27–4); Ex. 3(B) at 12 (# 27–5); Ex. 3(C) at 12) (# 27–6); Ex. 3(D) at 12 (# 27–7); Ex. 3(E) at 2 (# 27–8).) The provisions of ERISA and Ninth Circuit precedent also require such an award. *See* 29 U.S.C. § 1132(g)(2)(E); *Nw. Adm'rs, Inc.,* 104 F.3d at 258. On this basis, Plaintiffs seek attorney's fees and costs totaling $33,134.24.

■ Defendants reiterate the argument, already rejected above, that payment of delinquent contributions absolved Defendants of liability pursuant to section 1132(g)(2). Indeed, in the only case Defendants cite in support of this argument with regard to attorney's fees, the Ninth Circuit upheld an award of attorney's fees pursuant to section 1132(g)(2)(D) where the delinquent contributions had been paid prior to filing suit, but interest on the delinquent contributions was awarded by the district court. *See Parkhurst v. Armstrong Steel Erectors, Inc.,* 901 F.2d 796, 799 (9th Cir.1990). Thus, this argument again fails.

Defendants further argue that the requested attorney's fees should be substantially reduced based on the assertion, unsupported by evidence, that the vast majority of the fees relate to the dispute over whether B Witt was paying Local 702 rates for Local 872 work, and that "attorneys fees were not expended to any significant degree on Plaintiffs current claim." (Defs.' Opp. at 7(# 31).) Even presuming this assertion to be true, however, Defendants have presented no authority, nor any argument based on the language of ERISA or the agreements at issue in the present case, suggesting that an award of attorney's fees pursuant to section 1132(g)(2)(D) should be so limited. Plaintiffs' counsel may well have expended some effort on matters that were later resolved, either by Plaintiffs dropping a theory of recovery or by Defendants paying the disputed sum. But there is no reasonable argument that Plaintiffs' counsel's efforts were expended on matters unrelated to claims that B Witt was delinquent on required benefit payments either unpaid contributions or liquidated damages and other sums recoverable as a result of such delinquencies. Plaintiffs are entitled to a judgment in their favor on those claims. As such, Plaintiffs are entitled to recover those attorney's fees and costs pursuant to section 1132(g)(2)(D).

We have reviewed the affidavit of Michael V. Infuso, the principal attorney for Plaintiffs, attached to which is a detailed

itemization of the attorney's fees and costs. (*See* Pls.' MSJ, Ex. 5 (# 27–15).) Plaintiffs request attorney's fees in the amount of $31,999.00. This sum is derived from 57.20 hours of work performed by an attorney at an hourly rate of $285–$310, and 103.20 hours of work performed by a paralegal at an hourly rate of $160–$175. *See Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Summit Landscape Cos., Inc.,* 460 F.3d 1253, 1256–57 (9th Cir.2006) (stating that reasonable attorney's fees under section 1132(g)(2) may include the costs incurred separately by both attorneys and their support staff). Both the number of hours and the hourly rate are reasonable, and Defendant has presented no appropriate basis for reducing either. In addition to attorney's fees, Plaintiffs seek to recover $1,135.24 in costs. We conclude, therefore, that an award of attorney's fees and costs totaling $33,134.24 is appropriate, pursuant to B Witt's agreements and section 1132(g)(2)(D).

### E. B Witt's Delinquencies are Covered by the Merchants Bonds

Plaintiffs have sought summary judgment on the issue of whether Witt's alleged delinquencies are covered by two surety bonds issued to B Witt by Merchants in April 2006. (*See* Pls.' MSJ at 8–9(# 27); *id.* Ex. 5 ¶ 14 and Tab B (# 27–15).) Defendants have not disputed Plaintiffs' arguments with regard to the bonds, and the arguments appear on their face to be well founded. As such, Plaintiffs' motion for summary judgment will be granted in this regard.

### IV. Conclusion

Under the terms of its agreements with Plaintiffs and the provisions of ERISA, B Witt was obligated to make timely employee benefit contributions. B Witt failed to do so, and is therefore liable for a total of $333,312.25, consisting of $280,932.90 in liquidated damages, $24,956.36 in interest, $3,638.75 in audit fees, and $33,134.24 in reasonable attorney's fees and costs, minus a credit for $9,350.00 for payments made by B Witt during the course of the litigation. These liabilities are covered by the surety bonds issued to B Witt by Merchants.

***IT IS, THEREFORE, HEREBY ORDERED*** that the Plaintiffs' motion for summary judgment (# 27) is **GRANTED** on the following basis: Plaintiffs shall have judgment in their favor and against B Witt in the amount of $333,312.25 in liquidated damages, interest, audit fees, and reasonable attorney's fees and costs; B Witt's delinquencies are covered by the surety bonds issued to B Witt by Merchants.

The Clerk shall enter judgment accordingly.