NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

GREATER KANSAS CITY ROOFING; the New Greater Kansas City Roofing, Inc.; Maude Clementine Clarke, Respondents.

No. 92–9507.

United States Court of Appeals, Tenth Circuit.

Aug. 17, 1993.

dividends of common stock.

Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and OWEN, Senior District Judge.*

EBEL, Circuit Judge.

This case comes before us on application for enforcement of an order of the National Labor Relations Board ("NLRB"). The parties dispute the NLRB's decision to utilize the doctrine of piercing the corporate veil in order to hold the respondent, Maude Clementine Clarke ("Tina Clarke"), personally liable for a judgment rendered against the corporation she controlled. We hold that the NLRB erroneously pierced the corporate veil in this case in the absence of evidence and a finding that Tina Clarke used the corporate structure to promote fraud or that her disregard of the independent corporate existence of The New Greater Kansas City Roofing led to injustice or an evasion of legal obligations. Accordingly, we deny the NLRB's application for enforcement against Tina Clarke.[1]

## Facts

Until November 20, 1985, Greater Kansas City Roofing (GKC), a sole proprietorship owned by Judy Clarke and managed by her husband, Charlie Clarke, was engaged in the roofing business in Kansas City, Kansas. Compliance with the labor laws, however, proved to be problematic for the Clarkes. On December 2, 1983, the NLRB found, on summary judgment,[2] that GKC had committed unfair labor practices and ordered it to make payments to certain fringe benefit and fee accounts.[3] *Greater Kansas City Roofing*, 268 NLRB No. 41 at 7–10 (unpublished decision issued December 2, 1983). On April 23, 1984, the Tenth Circuit issued a judgment enforcing that order. *NLRB v. Greater Kansas City Roofing*, No. 84–1415 (10th Cir.

David A. Fleischer, Sr. Atty. (Jerry M. Hunter, Gen. Counsel and Aileen A. Armstrong, Deputy Associate Gen. Counsel, with him on the brief), N.L.R.B., Washington, DC, for petitioner.

Daniel B. Denk (Katherine E. Rich, with him on the brief) of McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for respondent.

* The Honorable Richard Owen, Senior District Judge for the Southern District of New York, sitting by designation.

1. We are only denying enforcement as to Tina Clarke individually. The remainder of the judgment was not objected to although it is part of the same order.

2. GKC had failed to file an answer to the complaint issued by the NLRB General Counsel.

3. GKC was found to have violated Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq., for refusing to check off union dues and initiation fees and remit them to the United Union of Roofers, Waterproofers, and Allied Workers Local 20, AFL–CIO ("the Union"). They were ordered to pay a total of $133,742.47 into the following accounts: Health and Welfare Fund, Pension Plan, Apprenticeship Training Program, and Membership Fees.

1984) (unpublished decision). On November 5, 1985, the NLRB obtained a contempt adjudication against GKC. *NLRB v. Greater Kansas City Roofing*, No. 84–1415 (10th Cir. 1985) (unpublished decision). Apparently, no part of the original order has been satisfied.

In late 1984, GKC began to experience monetary problems. Tina Clarke, Charlie's sister and respondent herein, began loaning money to GKC and making direct payments to the company's suppliers and employees. By August of 1985, Tina Clarke's records indicate she had advanced as much as $48,-000 to GKC, and she began to insist on certain operational changes in the business. In September of 1985, although the balance owed her by GKC had been reduced to $38,-000, Tina Clarke concluded that GKC would be unable to make any further payments, and she refused to advance any more funds to the business.

Soon thereafter, Tina Clarke contacted an attorney in an attempt to secure repayment of her loans to GKC. The attorney prepared a note and security agreement reflecting the balance of her loans. However, ultimately Tina Clarke concluded that GKC was "not going to make it." Accordingly, acting upon a suggestion from her attorney, Tina Clarke decided to set up a new corporation and run the business herself. Articles of Incorporation were executed on October 10, 1985 in the name of The New Greater Kansas City Roofing ("New GKC"). Tina Clarke was the sole shareholder, officer, and director of New GKC. Tina Clarke was unaware at the time New GKC was formed that GKC had committed unfair labor practices or that a judgment was outstanding against the business.

In November 1985, Judy Clarke and Tina Clarke executed an "Acknowledgment of Transfer to Secured Party in Lieu of Foreclosure," transferring the assets of GKC to Tina Clarke. Later, Tina Clarke transferred the assets to New GKC. All of New GKC's vehicles, equipment, and supplies, with the exception of one truck that was purchased later, had previously belonged to GKC. New GKC used the business address, telephone numbers, storage facilities, company logo, and bid format previously utilized by GKC. New GKC honored bids previously made by GKC and retained many of its customers. In addition, New GKC's staff was comprised almost exclusively of the former employees of GKC, including Charlie Clarke, who was employed by New GKC to manage the business as he had done for GKC.

Tina Clarke failed to adhere to the corporate formalities in her dealings with New GKC. She used a trade name associated with New GKC, as well as New GKC's address and phone number, to establish a credit card collection account and to open a checking account for her escort service, Affaire d'Amour. Tina Clarke caused New GKC to pay the escort service's telephone bill on at least one occasion. She loaned personal funds to the corporation in order to pay the corporate payroll without formal loan agreements and received corporate funds in return to pay down that loan. She also accepted a limited amount of corporate funds for purposes unrelated to the corporation. Furthermore, there is no indication that New GKC had bylaws, accounts, stock, corporate records, or held meetings.

On October 21, 1988, in an attempt to collect on the unfair labor practice judgment, the NLRB General Counsel issued a backpay specification alleging, among other things, that New GKC was liable as an alter-ego of GKC, and that the corporate veil of New GKC should be pierced so that Tina Clarke could be held personally liable for satisfaction of the Board's order of December 2, 1983. Briefs were filed and hearings were held before an administrative law judge ("ALJ"). The ALJ, on October 23, 1989, issued a supplemental decision finding that New GKC was liable for GKC's backpay obligations, but finding that Tina Clarke was not personally liable. The ALJ declined to pierce the corporate veil of New GKC in order to assess personal liability against Tina Clarke for two reasons. First, he concluded that, in light of NLRB precedent, Tina Clarke did not so intermingle her affairs with that of New GKC to justify ignoring the corporate boundaries. Second, he found that Tina Clarke did not use the corporate status of New GKC "to perpetrate fraud, evade existing obligations, or circumvent a statute."

The NLRB General Counsel filed exceptions and a supporting brief and Tina Clarke filed an answer brief before the NLRB. On November 25, 1991, the NLRB, through a three-member panel, issued a supplemental decision and order accepting the ALJ's conclusions regarding the liability of GKC and New GKC, but rejecting the ruling regarding Tina Clarke, instead holding her personally liable for the judgment. The NLRB found that "the Board is not limited to piercing the corporate veil only in cases where the corporate status is used to perpetrate fraud." Supplemental Decision & Order, at 3. Rather, the Board chose to pierce the corporate veil and to assess personal liability upon Tina Clarke solely because of the intermingling of her affairs with those of New GKC and her failure to observe corporate formalities. The Board accepted the ALJ's conclusion that Tina Clarke was not acting fraudulently or with any intent to violate the labor laws or to avoid payment of the preexisting backpay order.[4] In so ruling, the Board relied on its decision in *Concrete Mfg. Co.*, 262 NLRB 727, 729 (1982), and its broad authority to fashion appropriate remedies under 29 U.S.C. § 160(c).

The NLRB brings the present action seeking enforcement of the supplemental order issued on November 25, 1991, against GKC, New GKC, and Tina Clarke. The only question before us is whether Tina Clarke should be held personally liable for the judgment. We decide that she should not, and accordingly deny enforcement as to her.

*Standard of Review*

In reviewing an NLRB order, we grant enforcement if we find that the Board correctly interpreted and applied the law, and if its factual findings are supported by substantial evidence in the record as a whole. *Presbyterian/St. Luke's Medical Center v. NLRB*, 723 F.2d 1468, 1471 (10th Cir.1983). Section 10(e) of the National Labor Relations Act ("NLRA") establishes that the factual findings of the Board are conclusive "if supported by substantial evidence on the record." 29 U.S.C. § 160(e). As to questions of law, we generally afford the Board's determinations "great weight," *Crane Sheet Metal,*

*Inc. v. NLRB*, 675 F.2d 256, 257 (10th Cir. 1982), and uphold their determinations if within "reasonable bounds." *Presbyterian/St. Luke's*, 723 F.2d at 1472.

Whether a company or individual is responsible for the financial obligations of another company or individual is a question of federal law when it arises in the context of a federal labor dispute. *NLRB v. Fullerton Transfer & Storage Ltd.*, 910 F.2d 331, 335 (6th Cir.1990).

*Discussion*

The corporate structure is an artificial construct of the law, a substantial purpose of which is to create an incentive for investment by limiting exposure to personal liability. "The insulation of a stockholder from the debts and obligations of his corporation is the norm, not the exception." *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 402–03, 80 S.Ct. 441, 443–44, 4 L.Ed.2d 400 (1960) (citations omitted). In extreme circumstances, however, the corporate form will be disregarded and the personal assets of a controlling shareholder or shareholders may be attached in order to satisfy the debts and liabilities of the corporation. However, the corporate veil should be pierced only reluctantly and cautiously. *Cascade Energy and Metals Corp. v. Banks*, 896 F.2d 1557, 1576 (10th Cir.), *cert. denied*, 498 U.S. 849, 111 S.Ct. 138, 112 L.Ed.2d 105 (1990). Piercing the corporate veil is an equitable action and as such is reserved for situations where some impropriety or injustice is evident.

> If any general rule can be laid down, in the present state of authority, it is that a corporation will be looked upon as a legal entity as a general rule, and until sufficient reason to the contrary appears; but, when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons.... The corporate veil may not be pierced absent a showing of improper conduct.

1 Charles R.P. Keating & Gail O'Gradney, Fletcher Cyclopedia Corporations, § 41 at

---

**4.** The Board did not dispute the ALJ's credibility determinations or his factual findings.

603 (1990 ed.) (footnote omitted); *see* 18 C.J.S. *Corporations* § 10 at 277 (1990) ("Generally, a corporation is a legal entity, ... and such legal entity may not be disregarded except where equitable considerations require piercing the corporate veil."); 18 Am. Jur.2d *Corporations*, § 44 at 843–44 (1985) ("[D]isregard of the corporate entity may be invoked if this is necessary to preserve, protect or enforce [substantial rights rather than mere matters of organization], in other words to prevent an injustice.") (footnote omitted). As the NLRB has set out: "the corporate veil will be pierced whenever it is employed to perpetrate fraud, evade existing obligations, or circumvent a statute." *Riley Aeronautics Corp.*, 178 NLRB 495, 501 (1969) (citations omitted).

This is an alter ego case. That is, the NLRB has sought to pierce the corporate veil because of its conclusion that Tina Clarke disregarded New GKC as a separate entity and operated New GKC as if it were her own personal activity.

█ In accordance with prior Tenth Circuit precedent and *after careful consideration* of the analysis of this issue offered by our sister courts, we conclude that the federal common law doctrine of piercing the corporate veil under an alter ego theory can best be described by the following two-part test: (i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations. *See United*

States v. Van Diviner, 822 F.2d 960, 964–65 (10th Cir.1987); *Seymour v. Hull & Moreland Eng'g*, 605 F.2d 1105, 1111 (9th Cir. 1979); 1 Fletcher Cyclopedia, § 41.30 at 662; *see generally*, S. Presser, *Piercing the Corporate Veil*, § 3.16[4] at 3–160 to 3–170 (1991).[5]

█ The "separate corporate identity" prong is meant to determine whether the stockholder and the corporation have maintained separate identities. There are strong public policy reasons for upholding the corporate fiction. Where stockholders follow the technical rules that govern the corporate structure, they are entitled to rely on the protections of limited liability that the corporation affords. In determining whether the personalities and assets of the corporation and the stockholders have been blurred we consider (i) the degree to which the corporate legal formalities have been maintained, and (ii) the degree to which individual and corporate assets and affairs have been commingled.[6]

█ Under the fraud, injustice, or evasion of obligations prong of the test we ask whether there is adequate justification to invoke the equitable power of the court. We require an element of unfairness, injustice, fraud, or other inequitable conduct as a prerequisite to piercing the corporate veil. The NLRB, in an earlier case, recognized this equitable prong when it concluded that the doctrine of piercing the corporate veil is appropriate when the corporate structure has been misused to "perpetrate fraud, evade existing obligations, or to circumvent a statute." *Riley*, 178 NLRB at 501.

---

5. Although there may be minor variations in this test depending upon the federal context in which it is asserted, we perceive no reason to deviate from it in this context. Nor does the Board suggest any reason to apply a standard for piercing the corporate veil in this case that is more relaxed than the general federal common law standard. *See Fullerton Transfer & Storage*, 910 F.2d at 338; *Esmark, Inc. v. NLRB*, 887 F.2d 739, 753 (7th Cir.1989) ("[T]he Board may not disregard settled principles of corporate law.").

6. Among the specific factors considered by the court in determining whether the corporation and its stockholders have maintained their separate identities are:

(1) whether a corporation is operated as a separate entity; (2) commingling of funds and other assets; (3) failure to maintain adequate corporate records or minutes; (4) the nature of the corporation's ownership and control; (5) absence of corporate assets and undercapitalization; (6) use of a corporation as a mere shell, instrumentality or conduit of an individual or another corporation; (7) disregard of legal formalities and the failure to maintain an arms-length relationship among related entities; and (8) diversion of the corporation's funds or assets to noncorporate uses. *Van Diviner*, 822 F.2d at 965.

It should be emphasized that the showing of inequity necessary to satisfy the second prong must flow from the misuse of the corporate form. The mere fact that a corporation commits an unfair labor practice,[7] or breaches a contract, or commits a tort, does not mean that the individual shareholders of the corporation should personally be liable. To the contrary, the corporate form of doing business is typically selected precisely so that the individual shareholders will not be liable. It is only when the shareholders disregard the separateness of the corporate identity *and when that act of disregard causes the injustice or inequity or constitutes the fraud* that the corporate veil may be pierced. *See Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R.*, 417 U.S. 703, 713, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (1974) ("[T]he corporate form may be disregarded in the interests of justice where it is used to defeat an overriding public policy."); *Van Diviner*, 822 F.2d at 965 (finding, despite disregard for corporate formalities, that personal liability of shareholder was inappropriate because the corporate form was not misused in a way that would threaten injustice to the government). In most cases the mere fact that a corporation is incapable of paying all its debts is insufficient for a finding of injustice. *See Scarbrough v. Perez*, 870 F.2d 1079, 1084 (6th Cir.1989); *Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan v. Hroch*, 757 F.2d 184, 191 (8th Cir.1985); *Seymour*, 605 F.2d at 1113; *Riley*, 178 N.L.R.B. at 501. That condition will exist in virtually all cases in which there is an attempt to pierce the corporate veil.[8]

Furthermore, the individual who is sought to be charged personally with corporate liability must have shared in the moral culpability or injustice that is found to satisfy the second prong of the test. As one noted commentator has remarked:

> [t]he alter ego doctrine is not applied to eliminate the consequences of corporate operations, but to avoid inequitable results; a necessary element of the theory is that the fraud or inequity sought to be eliminated must be that of the party against whom the doctrine is invoked, and such party must have been an actor in the course of conduct constituting the abuse of corporate privilege—the doctrine cannot be applied to prejudice the rights of an innocent third party.

1 Fletcher Cyclopedia, § 41.20 at 639. *See* 18 C.J.S. *Corporations* § 12.

This two part test finds support in a wide array of precedent. In *Van Diviner*, 822 F.2d at 964–65, this court required the party requesting that the veil be pierced to show "that some injustice or inequity [would] result from recognition of the corporate entity," and it attached "considerable weight ... to the respect given the corporate form by the corporation's officers and shareholders." Similarly, in *Milgo Electronic Corp. v. United Business Communications, Inc.*, 623 F.2d 645 (10th Cir.), *cert. denied*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980), where we considered whether the corporate veil should be pierced to impose the liability of a

---

7. Even an individual shareholder's participation in a corporation's unfair labor practice as an officer or employee of the corporation is not sufficient to pierce the corporate veil if the individual was acting through the proper corporate form and was respecting the separate corporate identity. *See Esmark*, 887 F.2d at 757. We do not, of course, address whether there may be other bases for asserting personal liability against the individual in such a situation. No such issue is presented to us in this case.

8. Of course, undercapitalization could be found to be a sufficient indication of fraud or inequity in certain cases where the corporation was substantially undercapitalized in light of the nature and magnitude of the corporate undertaking. *See Anderson v. Abbot*, 321 U.S. 349, 362, 64 S.Ct. 531, 538, 88 L.Ed. 793 (1944); *Labadie*

*Coal Co. v. Black*, 672 F.2d 92, 99 (C.A.D.C. 1982); 18 Am.Jur.2d *Corporations*, § 50 at 854. However, the facts of this case are not such that unfairness or injustice can be properly inferred from Tina Clarke's alleged undercapitalization of New GKC. The Board would have us rely on its finding that there was "no evidence that New GKC was capitalized, sufficiently or otherwise." Supplemental Decision & Order at 4. The burden of proof, however, was on the N.L.R.B. to establish that there was a basis for piercing the corporate veil. *Hroch*, 757 F.2d at 190; 1 Fletcher Cyclopedia, § 41.28 at 658. We conclude that the finding that there was no evidence on this issue is insufficient to meet this burden and in effect was an improper attempt to shift the burden of proof onto Tina Clarke. *See Fullerton Transfer & Storage*, 910 F.2d at 341.

subsidiary on the parent corporation, we concluded

> [c]ircumstances justify disregard of the corporate entity if separation of the two entities has not been maintained and injustice would occur to third parties if the separate entity were recognized.

*Id.* at 659.[9]

Turning to our sister circuits, in *Labadie Coal Co.,* 672 F.2d at 96, the District of Columbia Circuit in deciding whether to pierce the corporate veil, examined both the degree to which the corporate formalities had been followed and whether an inequitable result would follow from recognizing the corporate structure. *See also United States v. Standard Beauty Supply Stores, Inc.,* 561 F.2d 774, 777 (9th Cir.1977).

Other circuits have articulated a similar test as three factors, although the second and third factors are really just commonly incurred variations on the equitable theme addressed in the second prong of our test. An early enunciation of a three part analysis was offered by a panel of the Ninth Circuit in *Seymour,* 605 F.2d at 1111:

> Viewing the jumble of federal decisions together, we find a sort of generalized federal substantive law on disregard of corporate entity which concentrates on three general factors: the amount of respect given to the separate identity of the corporation by its shareholders, the degree of injustice visited on the litigants by recognition of the corporate entity, and the fraudulent intent of the incorporators.

*See also United Electrical, Radio & Machine Workers of America v. 163 Pleasant St.* *Corp.,* 960 F.2d 1080, 1093 (1st Cir.1992); *Fullerton Transfer & Storage,* 910 F.2d at 340 (6th Cir.1990); *United Steelworkers of America v. Connors Steel Co.,* 855 F.2d 1499, 1507 (11th Cir.1988), *cert. denied,* 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989); *Hroch,* 757 F.2d at 190.

Several circuits have determined that all three of the *Seymour* factors must be met in order to justify piercing the corporate veil. *See 163 Pleasant St. Corp.,* 960 F.2d at 1093; *Connors Steel Co.,* 855 F.2d at 1507. Those circuits would require proof of both fraud and injustice whereas the second prong of the test as we have articulated it is satisfied if adherence to the corporate structure would either sanction fraud *or* promote injustice in light of the shareholder's disregard of the separate corporate identity. However, we do not find this difference to be very significant. First, the First and Eleventh Circuits utilized such broad definitions of fraud and injustice that while they consider the two factors to merit separate inquiries, they essentially constitute a single factor. Second, given the nature of the two factors, it would be unusual to find fraud in a particular case without also finding injustice. Third, as we have set forth, piercing the corporate veil is an equitable remedy. We find it sufficient to require that a party seeking to pierce the corporate veil show that there was a substantial disregard for the separate corporate identity, and that there is a compelling equitable reason for the court to expose the shareholder to personal liability in the form of fraud, injustice, or evasion of legal obli-

---

**9.** In *NLRB v. Tricor Products, Inc.,* 636 F.2d 266 (10th Cir.1980), this court was asked to determine whether one corporation was liable for the labor law violations of another corporation whose assets it had purchased. We concluded in that context that a determination as to whether a second employer is a mere successor to a first employer, or is its *alter ego,* involves a consideration of numerous factors. There is no hard-and-fast rule. If an employer makes changes in its business operation to deliberately get rid of the union, the employer is more likely to be an *alter ego.* If, however, the employer has legitimate economic reasons for the changes, and is not motivated by anti-union sentiment, the second employer is more likely to be deemed a mere successor to the first. In connection with this particular aspect, we think evidence of anti-union sentiment by an employer, occurring either before or after the change in the structure of the business, is germane.

*Id.* at 270.

A disguised continuance or successor corporation case presents different issues regarding when liability of one entity should be shared by a second entity than does the case where corporate liability is sought to be imposed upon a controlling stockholder. We do not address the disguised continuance or successor corporation situation in this opinion. In fact, in this case, New GKC was held to be liable for backpay because of the unfair labor practices of GKC. That holding of successor liability was not challenged.

gations flowing from the disregard of the separate corporate identity.

Here, there was neither evidence nor a finding that Tina Clarke committed fraud, either in the formation of the corporation or in the misuse of the corporate form after incorporation. *See Board of Trustees v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 773 (9th Cir.1989). As the ALJ found, "the record contains no suggestion that Tina Clarke used the corporate status of the New GKC in an attempt to perpetrate fraud, evade existing obligations or circumvent a statute." There is nothing to indicate that New GKC was formed in order to avoid the backpay award entered against GKC. The Board concluded that Tina Clarke was unaware of the Board's decision finding GKC liable for unfair labor practices when she acquired the corporation. Although, the record reveals that Tina Clarke violated many corporate formalities, there is no evidence that her disregard for formalities constituted fraud. *See Van Diviner*, 822 F.2d at 965.

Further, there is no showing that Tina Clarke used the corporate form of New GKC to work an injustice. Before Tina Clarke ever set up New GKC, GKC was in financial trouble. Tina Clarke had already loaned GKC over $30,000 of her own funds and it is clear that after the formation of New GKC she continued to loan her own money to the business. There is no evidence or finding that Tina Clarke looted the assets of New GKC to avoid payment of the backpay award, nor is there any evidence or finding that Tina Clarke's disregard of corporate formalities caused New GKC to be any less able to respond to the backpay order against it or otherwise caused injustice. In fact, the record supports the finding that Tina Clarke infused GKC and New GKC with her own personal assets.

We have a situation here where Tina Clarke was careless in the way she conducted business under New GKC. She admittedly failed to comply with corporate formalities and even commingled some corporate assets with her personal assets. However, New GKC was not formed until long after the

unfair labor practices had occurred. There is no link between Tina Clarke's sloppy manner of conducting business under New GKC and any fraud, injury or injustice to the former employees of GKC or their union with regard to the unfair labor practices that gave rise to this backpay order.[10] Thus, it was a clear error of law for the NLRB to seek to hold Tina Clarke personally liable for the corporate obligations of New GKC under an alter ego theory of piercing the corporate veil. *See* 18 C.J.S. *Corporations*, § 14 at 284 ("Informality in the operation of a closely held corporation will not lead to disregard of the corporate entity if the informality neither prejudices nor misleads plaintiff.")

We conclude, as did the Board in *Riley*, 178 N.L.R.B. at 501:

> [t]o require [the individual] to make good the corporation's backpay liability out of [her] personal funds would operate to defeat the very purpose of [her] incorporating the business to escape individual liability. If the corporate funds are insufficient to meet the backpay obligation, the Board's recourse is that of a "creditor," which includes enforcing the claim in insolvency or bankruptcy proceedings.

We DENY enforcement of the Board's order as to Tina Clarke.

---

**10.** Because we decide that the second prong of the test is not satisfied, we do not need to decide whether the separate corporate identity has been adequately preserved to satisfy the first prong.