[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/20/99
THOMAS K. KAHN
CLERK

_____

No. 98-5192
Non-Argument Calendar

_____

D.C. Docket No. 12-CA-16716

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

versus

WEST DIXIE ENTERPRISES, INC. and
CAROLE ANN PAOLICELLI and PAUL
PAOLICELLI,

Respondents.

_____

Application for Enforcement of an Order
of the National Labor Relations Board

_____

(July 20, 1999)

Before EDMONDSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

West Dixie Enterprises, Inc. and Carole Ann and Paul Paolicelli appeal the

National Labor Relations Board's (NLRB) order holding them liable for violating sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 158(a)(1) and 158(a)(3), respectively. For the reasons set forth below, we affirm the NLRB's order.

## I. BACKGROUND

Beginning in 1993, West Dixie was a Florida corporation doing business as an electrical contractor. Carole Ann Paolicelli was the company's owner, sole shareholder, and president. Her husband, Paul Paolicelli, directed all of West Dixie's daily operations.

At times, Mr. Paolicelli made personal loans to West Dixie and used his personal credit card to order materials and equipment for the company. In addition, the Paolicellis often issued checks from their personal joint checking account to meet the payroll, and Mrs. Paolicelli allowed employees to use her personal car for company business. For approximately six months, West Dixie funds were used to pay the rent on Mr. Paolicelli's apartment.

The NLRB found that in July, August, and September of 1994, West Dixie refused to hire three job applicants because of their union membership; created the impression that union activities were under surveillance; interrogated employees about union membership; prohibited employees from discussing the union; and

threatened to assign union supporters more burdensome job duties. The respondents do not dispute these findings for purposes of the appeal. The respondents also do not dispute that from the beginning of May 1994 to the end of October 1994, West Dixie made interstate purchases of supplies totaling more than $50,000.

West Dixie was administratively dissolved on August 26, 1994 for failure to file an annual report under Florida law. The Paolicellis continued to operate the business as usual under the name West Dixie until it was reinstated as a corporation on October 25, 1995. West Dixie has not operated as a business since its reinstatement.

The International Brotherhood of Electrical Workers, Local Union No. 728 filed a charge of unfair labor practices against West Dixie on October 31, 1994. The NLRB conducted an investigation and filed a complaint against West Dixie on February 28, 1995. The complaint was later amended to add the Paolicellis as alter egos of the corporation. After a hearing in October 1996, an Administrative Law Judge ("ALJ") concluded that (1) West Dixie engaged in at least the minimum amount of commerce required to invoke the NLRB's jurisdiction; (2) West Dixie committed unfair labor practices in violation of the NLRA; and (3) the Paolicellis were alter egos of West Dixie and were therefore also liable for the violations. The

3

respondents filed exceptions to the ALJ's decision, but the NLRB entered a Final Order in November 1997 affirming the ALJ's decision. West Dixie and the Paolicellis appealed, raising only the jurisdictional and alter ego issues.

We review the NLRB's factual findings to determine whether they are supported by substantial evidence in the record as a whole. See Rockwell Int'l Corp. v. NLRB, 814 F.2d 1530, 1533 (11th Cir. 1987).

## II.  DISCUSSION

### A.  Did the NLRB err in exercising jurisdiction over West Dixie and the Paolicellis?

Section 10(a) of the NLRA gives the NLRB statutory jurisdiction "to prevent any person from engaging in any unfair labor practice . . . affecting commerce." 29 U.S.C. § 160(a). The Supreme Court has explained that "in passing the [NLRA], Congress intended to and did vest in the Board the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause." NLRB v. Reliance Fuel Oil Corp., 371 U.S. 224, 226, 83 S. Ct. 312, 313 (1963). The NLRB has, however, imposed an additional limit on its jurisdiction: its "jurisdiction exists when gross interstate inflow (purchases) or outflow (sales), whether direct or indirect, exceeds $50,000.00 [in a one-year period]." NLRB v. Jerry Durham Drywall, 974 F.2d 1000, 1002 (8th Cir. 1992).

The NLRB found that from the beginning of May 1994 to the end of

4

October 1994, West Dixie made interstate purchases of supplies totaling more than $50,000. Because 1994 was also the year the NLRA violations allegedly took place, the NLRB based its jurisdiction upon calendar year 1994. The respondents do not dispute the calculation of the amount of supplies purchased during that time period, but instead contend that calendar year 1994 was not an appropriate period upon which to establish jurisdiction.

The respondents argue that under Jerry Durham Drywall, the NLRB was required to use the "figures for the most recent calendar or fiscal year, or the year just before the Board hearing." Id. That decision merely holds, however, that the NLRB "may rely" on the figures from those years. Id. (emphasis added). It also unambiguously states that "the jurisdictional criteria 'do not literally require evidentiary data respecting any certain 12-month period of operation.'" Id. (quoting Reliable Roofing Co., 246 N.L.R.B. 716, 716 n.1 (1979)). See also Old Capital Inn, Inc., 227 N.L.R.B. 1323, 1324 (1977) (adopting the recommended order of the ALJ, who stated in his jurisdictional analysis that he could "find no authority which would limit the choice of a representative period").

Where the NLRB has asserted jurisdiction within constitutional and statutory bounds, courts will overturn its exercise of jurisdiction only in "extraordinary circumstances." NLRB v. Marinor Inns, Inc., 445 F.2d 538, 541 (5th Cir. 1971).

Accord <u>NLRB v. Erlich's 814, Inc.</u>, 577 F.2d 68, 71 (8th Cir. 1978). It is clear that no such extraordinary circumstances are present in this case. The NLRB was not required to use any particular 12-month period as the representative period for jurisdictional purposes, and it reasonably selected the calendar year in which the violations allegedly took place. <u>See</u>, <u>e.g.</u>, <u>Hartford Glass Co.</u>, 230 N.L.R.B. 103, 103 (1977) (considering, for jurisdictional purposes, the employer's dollar volume of business during the year of the alleged unfair labor practices).

Accordingly, we conclude that the NLRB did not err in exercising jurisdiction over West Dixie and the Paolicellis.[1]

## B. Did the NLRB err in holding Carole Ann and Paul Paolicelli liable for West Dixie's violations of the NLRA?

The Paolicellis argue that they are not personally liable for the NLRA violations under Florida Statutes § 607.1421(4), which sets forth the state law conditions for piercing the corporate veil and holding individuals personally liable for corporate misdeeds. It is clear, however, that "personal liability for remedial obligations arising from corporate unfair labor practices under the National Labor Relations Act is a question of Federal law because it arises in the context of a

---

[1]The respondents also argue that the NLRB's reliance on commerce occurring in October 1994, one month after the last of the alleged unfair labor practices, to establish jurisdiction violates Ex post Facto and Due Process principles. This argument is clearly without merit, and we do not address it in further detail here.

Federal labor dispute."  White Oak Coal, 318 N.L.R.B. 732, 734 (1995). Accord

NLRB v. Greater Kansas City Roofing, 2 F.3d 1047, 1051 (10th Cir. 1993); NLRB

v. Fullerton Transfer & Storage Ltd., 910 F.2d 331, 335 (6th Cir. 1990).

In White Oak Coal, the NLRB adopted the Tenth Circuit's two-pronged test

for determining whether owners or operators of a corporation are personally liable

for the unfair labor practices of the corporation.  Under that test:

> the corporate veil may be pierced when: (1) there is such unity of
> interest, and lack of respect given to the separate identity of the
> corporation by its shareholders, that the personalities and assets of the
> corporation and the individuals are indistinct, and (2) adherence to the
> corporate form would sanction a fraud, promote injustice, or lead to an
> evasion of legal obligations.

Id. at 735 (adopting the test established in Greater Kansas City Roofing, 2 F.3d at

1052).

Under the first prong, courts should consider "(a) the degree to which the

corporate legal formalities have been maintained, and (b) the degree to which

individual and corporate funds, other assets, and affairs have been commingled."

Id.  In this case, there is substantial evidence of commingling of funds and assets

and of a failure to maintain corporate formalities.  The Paolicellis often used

personal checks or credit cards to pay for West Dixie's supplies and payroll.  In

addition, West Dixie paid six months' rent for Mr. Paolicelli's personal apartment.

The Paolicellis produced no records indicating that any of these payments were

7

bona fide loans or repayments, or that the individual and corporate identities were kept separate. The failure to keep adequate records itself may evidence a lack of arm's-length dealing between the individuals and the corporation under White Oak Coal. See id.

With regard to the second prong of the test, whether a finding of no personal liability "would sanction a fraud, promote injustice, or lead to an evasion of legal obligations," we acknowledge that in this case most of the payments flowed from the individual owners and operators to the corporation instead of in the opposite direction. But it is undisputed that West Dixie funds were used to pay rent on Mr. Paolicelli's personal apartment for six months, and the Paolicellis have failed to produce records showing that this arrangement constituted anything but a diversion of corporate assets for personal use. As a result, those funds are unavailable to meet West Dixie's remedial obligations under the NLRA.

In addition, the Paolicellis continued to operate their electrical contracting business under the name West Dixie after the corporation was administratively dissolved under Florida law on August 26, 1994 until it was reinstated on October 25, 1995. The continued operation of the business cuts in favor of piercing the corporate veil under both prongs of the test. It not only demonstrates a failure to adhere to corporate formalities and maintain separate identities, but also could have

8

affected the corporation's ability to meet its remedial obligations resulting from the unfair labor practices.

For these reasons, we hold that the NLRB did not err in concluding that the Paolicellis are personally liable for West Dixie's violations of the NLRA.

## III. CONCLUSION

AFFIRMED.