**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 31 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

In re:

LOLA FAYE DENTON,

Debtor.

THELMA PATTERSON,

Appellant,

v.

KENNETH L. SPEARS, Trustee,

Appellee.

No. 99-6059
(D.C. No. CIV-98-725-C)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **BALDOCK** , **PORFILIO** , and **BRORBY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This appeal arises out of an adversary proceeding commenced by Appellee Kenneth Spears, the trustee for the bankruptcy estate of debtor Lola Faye Denton, to recover certain property for the debtor's estate. Among others, Spears sued Appellant Thelma Patterson, who is Denton's mother. The matter was tried to the bankruptcy court along with another adversary proceeding commenced by one of Denton's creditors. On appeal, Patterson challenges the propriety of two bankruptcy court rulings that the district court affirmed. First, she contends the bankruptcy court erred in ruling that an irrevocable spendthrift trust created by Denton for her own benefit could be revoked only with the written consent of all interested parties, so the alleged oral revocation of the trust was of no effect. Patterson, who was the trustee of the spendthrift trust, claims that she had contributed virtually all of the corpus of the trust and that the trust was revoked, and the corpus distributed, long before Denton filed bankruptcy. Second, Patterson contends the bankruptcy court erred in piercing the corporate veil of Native Elm Mobilehome Park, Inc. ("Native Elm") and making the corporation's assets part of the debtor's estate. She claims that she owned and controlled Native Elm and that its assets belong to her.

-2-

We review the bankruptcy court's legal determinations de novo, and its factual findings for clear error. *See Phillips v. White (In re White)*, 25 F.3d 931, 933 (10th Cir. 1994). Both parties agree that all the issues raised on appeal are governed by Oklahoma law. Before we turn to these issues, we note that our review of this appeal was hindered by Patterson's failure to comply with 10th Cir. R. 28.2(C)(2), which requires her to refer to the specific places in the record where each issue was raised and ruled on, and by her failure to provide us the complete record pertaining to the rulings and issues on appeal.

The bankruptcy court found that in 1984, Denton, as the named settlor, created for her own benefit an irrevocable spendthrift trust. Patterson does not challenge these findings on appeal. She argues, however, that the trust was revoked by oral consent of all the interested parties in the early 1990s. The bankruptcy court determined that the trust had not been revoked, because Oklahoma's Trust Act requires the "written consent of all living persons having vested or contingent interest" in the trust to revoke an irrevocable spendthrift trust that was "created by the trustor for his own benefit." Okla. Stat. tit. 60, § 175.41. Patterson does not dispute that there was no written consent; she argues only that the interested parties' alleged oral consent was legally sufficient to revoke the trust.

-3-

Based upon the plain language of the statute, we conclude the bankruptcy court correctly concluded that written consent was necessary to revoke the trust. *See, e.g., Morrison v. Ardmore Indus. Dev. Corp.*, 444 P.2d 816, 820 (Okla. 1968). Patterson's reliance on *Wade v. McKeown*, 145 P.2d 951 (Okla. 1943), to support her argument that no writing is required, is misplaced. The facts of *Wade*, which involved a trust created before the enactment of the Trust Act, are quite different from the facts here, and the *Wade* decision did not address the statutory requirements for revocation. Because there was no evidence that the interested parties agreed in writing to revoke the trust, the bankruptcy court correctly concluded that the trust was still in effect.

We turn, then, to the bankruptcy court's rulings regarding Native Elm. The bankruptcy court initially ruled that Denton had an interest in Native Elm and that the corporation was her instrumentality. Based on this determination, the bankruptcy court concluded it was appropriate to pierce the corporate veil and treat the corporation's assets as assets of Denton's bankruptcy estate. Patterson attacked the instrumentality finding on appeal to the district court and also argued that Oklahoma law required an additional showing that Denton used Native Elm to perpetrate a fraud before the court could pierce Native Elm's corporate veil. The district court affirmed the bankruptcy court's instrumentality finding, but agreed with Patterson that the instrumentality finding, alone, was not sufficient to

-4-

pierce the corporate veil under Oklahoma law. Therefore, the district court remanded the matter for the bankruptcy court to determine whether Denton also used Native Elm as part of a design or scheme to perpetrate a fraud.

On remand, the bankruptcy court found that Denton did use Native Elm as part of a design or scheme to defraud her creditors. Patterson appealed this determination to the district court and also argued that the bankruptcy court erroneously effected what is known as a "reverse pierce" of the corporation, by allowing the assets of Native Elm to be used to satisfy the debts of Denton.[1] Based on this court's opinion in *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1576-78 (10th Cir. 1990), Patterson argued that allowing a reverse pierce of Native Elm would prejudice the rights of an innocent third

---

[1] In a case involving a standard pierce, a creditor of the corporation is attempting to pierce the veil of a corporate entity to reach the assets of the controlling insider. By contrast, in a case involving a reverse pierce, "either a corporate insider or a person with a claim against a corporate insider is attempting to have the insider and the corporate entity treated as a single person for some purpose." Gregory S. Crespi, The Reverse Pierce Doctrine: Applying Appropriate Standards, 16 J. Corp. L. 33, 36 (1991). An "outsider" reverse pierce may occur when "a third party claimant . . . files an action against the corporate insider and attempts to pierce the corporation to subject corporate assets to this claim [or when] a third party claimant . . . attempts to assert that claim against the corporation in an action between the corporation and the third party." *Id.* at 37. An "insider" reverse pierce may occur when "a dominant shareholder or other controlling insider . . . attempts to have the corporate entity disregarded to avail the insider of corporate claims against third parties or to bring corporate assets under the shelter of protection from third party claims that are available only for assets owned by the insider." *Id.* In the present case, Spears is attempting to pierce the corporate veil to use corporate assets to satisfy the personal debts of Denton, thereby effecting an outsider reverse pierce.

person, namely herself, and that the court should not apply the reverse pierce doctrine in the absence of a clear statement by the Oklahoma Supreme Court that the Oklahoma courts have adopted the doctrine.

The district court addressed Patterson's objections to the reverse pierce doctrine on the merits, even though it does not appear that Patterson had raised those objections in the bankruptcy court. [2] The district court noted that this court criticized the reverse pierce doctrine in *Cascade Energy*, but the court concluded the doctrine should be applied here because there was substantial evidence that Native Elm and Denton "were indistinct in operation, and recognition of the corporate entity would allow Denton to avoid legal obligations and defraud her creditors," Appellant's App., Vol. I, at 94 (citing *NLRB v. Greater Kan. City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993)). The district court also rejected Patterson's challenges to the bankruptcy court's determination that Denton used Native Elm as part of a design or scheme to defraud her creditors, and affirmed the bankruptcy court's decision.

On appeal, Patterson challenges the bankruptcy court's determinations that Native Elm was an instrumentality of Denton and that Denton used Native Elm as part of a design or scheme to defraud her creditors. Patterson also argues that we

---

[2] Patterson failed to include in her appendix the briefs she filed in the bankruptcy and district courts. Based on the bankruptcy court's decision, however, it does not appear that Patterson presented this argument to that court.

-6-

should not uphold the bankruptcy court's use of a reverse pierce to make Native Elm's assets part of the debtor's estate. Although the record does not reflect that Patterson challenged the use of a reverse pierce in the bankruptcy court, we will exercise our discretion to consider the matter on appeal because it involves a question of law, the matter is dispositive, the district court did not deem it waived, and Spears has not suggested that we should deem the matter waived or that the district court should have done so. *See, e.g.*, *Ross v. United States Marshal*, 168 F.3d 1190, 1195 n.5 (10th Cir. 1999) (exercising discretion to hear issue not raised in trial court because it presented a matter of law, the resolution of which was certain).

In *Cascade Energy*, this court considered a claim under Utah law involving an outsider reverse pierce, *see infra* n.1. The district court had concluded that several corporations were instrumentalities of the primary shareholder and were used by him for personal purposes. The district court also had determined that "[i]t would be inequitable and a fraud on the opposing parties" not to hold all the corporate entities jointly and severally liable for any judgment against the shareholder or any one of the corporations. 896 F.2d at 1574. On appeal, we agreed with the district court's factual findings that the shareholder "wielded almost total control over the entities," and "freely transferred cash from any entity that had it to any entity that needed it, whenever he wanted to do so." *Id.* at 1576.

Nonetheless, we recognized that a reverse pierce of the corporate veil presents many problems that a standard pierce does not. For instance, use of a reverse pierce "bypasses normal judgment-collection procedures, whereby judgment creditors attach the judgment debtor's shares in the corporation and not the corporation's assets. Moreover, to the extent that the corporation has other non-culpable shareholders, they obviously will be prejudiced if the corporation's assets can be attached directly." *Id.* at 1577. Accordingly, we stated that

> [a]bsent a clear statement by the Supreme Court of Utah that it has adopted the [outsider] reverse piercing theory urged upon us here, we are inclined to conclude that more traditional theories of conversion, fraudulent conveyance of assets, respondeat superior and agency law are adequate to deal with situations where one seeks to recover from a corporation for the wrongful conduct committed by a controlling stockholder without the necessity to invent a new theory of liability.

*Id*.

More recently, we considered whether the district court properly permitted an outsider reverse pierce under Kansas law, in *Floyd v. IRS*, 151 F.3d 1295, 1298-99 (10th Cir. 1998). At issue in the suit was the priority of claims held by three different creditors in certain corporate assets. The IRS had a claim for unpaid personal income taxes against the controlling shareholder of the corporations, while the other creditors had judgments against both the controlling shareholder and his corporations. The district court applied the reverse pierce doctrine to grant the IRS priority to the corporate assets over the other creditors.

-8-

In considering whether the district court properly permitted a reverse pierce, we rejected the IRS' reliance on Kansas cases involving standard pierces, concluding those precedents were not applicable to a reverse pierce. *Id.* at 1298. We also noted that the reverse pierce doctrine gives rise to problems beyond those identified in *Cascade Energy*, including that innocent creditors of the corporation may be prejudiced if the corporation's assets are used to satisfy the personal debts of an insider. *Id.* at 1299. Accordingly, we followed "*Cascade*'s federal law conclusion that, in the absence of a clear statement of Kansas law by the Kansas courts, we will not assume that such a potentially problematic doctrine already has application in that state." *Id.* at 1300. Because the IRS had cited no authority "suggesting that Kansas does or would recognize an outside reverse-piercing claim," *id.* at 1299, and our own research had revealed none, we reversed the district court's ruling.

Likewise, Spears has cited no authority here suggesting that Oklahoma does or would allow an outsider reverse pierce of the corporate veil, and our own review of Oklahoma law reveals no such authority. Spears' reliance on our analysis in *NLRB v. Greater Kansas City Roofing*, 2 F.3d at 1052, is misplaced, because that case concerned a standard pierce of the corporate veil under federal common law. In the absence of a clear statement by the Oklahoma courts, we will not assume that Oklahoma would allow an outsider reverse pierce like that here.

-9-

Therefore, we conclude the district court erred in affirming the bankruptcy court's reverse pierce of Native Elm's corporate veil. Because this ruling disposes of Spears' claim to Native Elm's assets, we need not decide whether the bankruptcy court's underlying instrumentality and fraud determinations were correct.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED in part and REVERSED in part, and the matter is REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court


Wade Brorby
Circuit Judge