F I L E D
**United States Court of Appeals
Tenth Circuit**

**JUN 15 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

NATIONAL LABOR RELATIONS
BOARD,

       Petitioner,

v.

RELIABLE ELECTRIC
CONSTRUCTION COMPANY, INC.;
ANTHONY PRILIKA,

       Respondents.

No. 00-9522
(No. 27-CA-8682)
(Petition for Review)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **BRISCOE** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The National Labor Relations Board has filed an application for enforcement of its order holding that respondents Reliable Electric Construction Company, Inc. [1] and Anthony Prilika are to be held jointly and severally liable for a backpay award issued as a result of Reliable Electric Company's unfair labor practices. We grant enforcement.

In 1976, Anthony Prilika purchased Reliable Electric Company, a business which had been engaged in the electrical contracting business since 1920. Anthony Prilika was the majority shareholder, director and president of Reliable Electric Company until 1988 when his son, Robert, acquired a twenty-five percent ownership interest in the company. In 1980, Reliable Electric Company filed for Chapter 11 bankruptcy protection. In 1990, Reliable Electric Company ceased operations. It filed for Chapter 7 liquidation in 1992. In 1990, Reliable Electric Construction, the admitted successor corporation to Reliable Electric Company, was incorporated. Robert Prilika took a much larger role in Reliable Electric Construction both in terms of ownership and as president of the company.

In 1987, the NLRB determined that Reliable Electric Company had committed unfair labor practices when Anthony Prilika had unilaterally repudiated a contract with the International Brotherhood of Electrical Workers Union. The

---

[1]     Reliable Electric Construction has not responded to this application. Thus, enforcement as to this company is granted without discussion.

Board ordered Reliable Electric Company to (1) pay six employees lost wages plus interest resulting from their unlawful discharges, (2) pay damages to two employees who remained employed, and (3) make contributions to seven trust funds. This court affirmed that award in 1992. Since that time, the NLRB has been attempting to collect on the award which now totals over $520,000.00. In the action underlying this appeal, the Board held that (1) Reliable Electric Construction is the successor corporation of Reliable Electric Company and should be held liable for the award and (2) the corporate veil should be pierced as to Anthony Prilika and he should be held jointly and severally liable with Reliable Electric Construction. Anthony Prilika contests the Board's determination to pierce the corporate veil and hold him personally liable.

> In reviewing an NLRB order, we grant enforcement if we find that the Board correctly interpreted and applied the law, and if its factual findings are supported by substantial evidence in the record as a whole. Section 10(e) of the National Labor Relations Act ("NLRA") establishes that the factual findings of the Board are conclusive if supported by substantial evidence on the record. As to questions of law, we generally afford the Board's determinations great weight, and uphold their determinations if within reasonable bounds.

*NLRB v. Greater Kan. City Roofing*, 2 F.3d 1047, 1051 (10th Cir. 1993) (citations and quotations omitted).

In order to determine whether the corporate veil should be pierced, this court must ask:

> (i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations.

*Id.* at 1052. Anthony Prilika concedes the first prong. Therefore, we need only examine whether the Board properly determined that the second prong has also been met.

Anthony Prilika argues that the second prong has not been met because the Board ignored the ability of the successor corporation, Reliable Electric Construction, to pay its obligation under the decision. Anthony Prilika also asserts he did not commit fraud, evade existing obligations or try to circumvent any statute.

"The mere fact that a corporation commits an unfair labor practice . . . does not mean that the individual shareholders of the corporation should personally be liable." *Id.* at 1053 (footnote omitted). "It is only when the shareholders disregard the separateness of the corporate identity *and when that act of disregard causes the injustice or inequity or constitutes the fraud* that the corporate veil may be pierced." *Id.* "[T]he individual who is sought to be

charged personally with corporate liability must have shared in the moral culpability or injustice . . . ." *Id.*

Our reading of the record supports the Board's adoption of the administrative law judge's findings of fact. "Adherence to corporate formalities" in this case was "virtually nonexistent." *Reliable Elec. Co.*, 330 N.L.R.B. No. 111, 2000 WL 248215, at *17 (Feb 29, 2000). For example, while personal loans to a company are not, per se, an indicia of fraud, *see Greater Kan. City Roofing*, 2 F.3d at 1055 (no injustice found where individual loaned company her own funds), here Anthony Prilika made undocumented loans of uncertain amounts. The record shows the loans are estimated to range from $180,000.00 to $200,000.00. Consequently, "the actual amount of [Anthony] Prilika's equitable interest in [Reliable Electric] Construction can be ascertained with only a marginal degree of certainty." *Reliable Elec. Co.*, 2000 WL 248215, at *17. Anthony Prilika testified that he receives a weekly salary of $850.00 which he applies towards repayment of the loans. No information was proffered as to how much of the loans has been repaid or what interest rate, if any, is being charged on them. As the ALJ stated:

> No real records exist which would allow a determination of the
> actual market value of the contribution in equipment and supplies
> from [Reliable Electric] Company to [Reliable Electric]
> Construction. Company's funds were deposited in Construction's
> account before Construction commenced any operations or performed
> any work. Company's employees were paid from funds in

Construction's accounts. Tax returns purportedly contained erroneous statements of ownership although I seriously doubt that. Accounting records obviously commingled the assets of Construction and Company, *and were used in obtaining credit and bonding for Construction*, an otherwise seriously undercapitalized entity. *Full disclosure of corporate identities were not made* to important customers and the corporate designation was used for substantial periods before incorporation occurred in Construction's case and not at all in the instance of Reliable Construction, the entity through which tax withholding payments were made. . . . *[V]ehicles purportedly purchased with Construction's money were titled in the name of another Prilika entity owned and controlled by Anthony*.

*Id.* (emphases added).

We must agree that the record contains "ample evidence" that Anthony

Prilika's

equitable interest and personal involvement in Construction is so pervasive that it is unlikely it would have existed or would continue to exist without his personal backing. The evidence in this case shows that Anthony obviously infused Construction with the necessary cash, supplies, and equipment-some of it his own, most of it Company's-to permit its operation without regard to corporate formalities or candid disclosures to tax and regulatory authorities, retained accounting professionals, creditors, insurers, customers, or employees. Should Anthony decide to withdraw that support, Construction would likely become another empty shell and its legal obligations, including the backpay liability in this case, would go unsatisfied. . . . [T]he evidence implicates Anthony personally in avoidance schemes, such as using the net-loss carryovers obviously generated by his defunct corporation to offset the tax liability of an ongoing enterprise he now claims he does not own . . . .

*Id.* at *18.

In addition, both Anthony Prilika's testimony and that of his son were full of internal inconsistencies and were inconsistent with each other. The bookkeeper also dissembled when giving her testimony.

Applying the facts found by the Board, which are supported by substantial evidence in the record, to the applicable law, we conclude that the Board correctly interpreted and applied the law. As the Board's determinations are within reasonable bounds, we GRANT the NLRB's application for enforcement. Petitioner's motion for default judgment against Reliable Electric Construction Co. is DENIED. *See* 10th Cir. R. 27.2(A)(1) (identifying dispositive motions party may file on appeal). Petitioner's motion to strike portions of the respondent's brief is GRANTED. *See Micheli v. Director, OWCP*, 846 F.2d 632, 635 (10th Cir. 1988) (court will not consider an issue on appeal which party did not raise before administrative agency at appropriate time); *see also Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) (court will not ordinarily review issues first raised in reply brief).

Entered for the Court

Michael R. Murphy
Circuit Judge